[No. 1846]

# THE STATE OF NEVADA, EX REL. J. G. KAUFMAN, ET AL., RELATOR, v. C. T. MARTIN, ET AL., RESPONDENTS.

1. STATUTES—CONSTRUCTION.

> Courts will construe the language of a statute so as to give effect to, rather than to nullify, it.

2. COUNTIES—COUNTY-SEAT—REMOVAL.

> Comp. Laws, 5007, provides that whenever three-fifths of the qualified electors of any county, each elector being a taxpayer of said county, shall petition the county commissioners for the removal of the county-seat, the commissioners shall cause an election to be held, etc. *Held*, that the words "each elector being a taxpayer of said county" refer to the preceding word "electors," and hence the petition is sufficient when three-fifths of the qualified taxpaying electors are signers of the petition.

3. MANDAMUS—TO COUNTY COMMISSIONERS—COUNTY-SEAT—ELECTION.

> Comp. Laws, 5007, requires the county commissioners to cause an election on the question of the removal of the county-seat to be held when a petition for such removal, signed by three-fifths of the qualified taxpaying electors of any county, as appears by the last assessment roll, etc., is presented. Section 5010 provides that every such petition shall be accompanied by a certificate of the registry agent of the district, showing that all the petitioners are qualified electors of such county, as appears by the registry list of said district, or the affidavits on file, of persons not registered at the last election, but who are qualified electors of said county. *Held*, that the determination of the questions as to whether the signers were on the last assessment roll and as to whether they had taken the oath prescribed by law for the registration of electors, when that fact was certified by the registry agent, are ministerial acts, and that *mandamus* will lie to compel the board to call an election, if a petition is filed by three-fifths of the taxpaying voters, as shown by the roll and registration certified, although the board has already acted and denied the petition.

ORIGINAL PROCEEDING. Application by the State, on the relation of J. G. Kaufman and others, for writ of mandate against C. T. Martin and others, Board of County Commissioners of Lyon County. **Demurrer to application overruled.**

The facts are sufficiently stated in the opinion.

*Huskey & Springer*, for Relator:

I. Respondents in the present case were vested with no discretion whatever in deciding upon the sufficiency of the petition presented to compel action on their part, but acted in a ministerial capacity.

II. *Mandamus* will not lie until respondent is in actual

default, and he is not in actual default until the time passes within which he may legally do the act enjoined. In the meantime no threat or determination not to act will serve to put him in default. (*State* v. *Gracey*, 11 Nev. 233; *State* v. *Rising*, 15 Nev. 165; *State* v. *Noyes*, 25 Nev. 48; *Hardin* v. *Guthrie*, 26 Nev. 251.)

III. In reference to the question of statutory construction, we invite the attention of the court to the general rule of statutory construction that "where a question of construction is before the court, words and phrases may be transposed, and grammatical sense does not always control."

*C. H. Miller* and *Mack & Green*, for Respondents:

I. It has been repeatedly and uniformly held by this court that *mandamus* does not lie to review or control the exercise of judicial functions. To entitle a relator to a writ of *mandamus*, his right must be a clear legal one. *Mandamus* will never issue to enforce an equitable right. (13 Ency. Pl. & Pr. 496, and cases cited; 26 Cyc. 151.) The writ of *mandamus* was never designed to displace or supersede other legal or equitable remedies. In an application for a writ of *mandamus* the relator must show a clear legal right to the relief demanded. (*State* v. *Noyes*, 25 Nev. 32; *State* v. *Stoddard*, 25 Nev. 452; *Pyne* v. *LaGrave*, 22 Nev. 417; *State* v. *Boerlin*, 98 Pac. 402; *State* v. *Meder*, 22 Nev. 226.)

II. The petition presented to the board was not sufficient to invoke the authority of the board to call a special election. The petition prayed for a special election to move the county-seat of Lyon County from the town of Dayton to the city of Yerington. Under the law no election could be held for such purpose, and the board was perfectly right in denying the petition. The law authorizes the filing of a petition to move the county-seat merely—not to remove it to a particular place, for that is a question to be determined by the voters—and it was right for the board of county commissioners to deny the petition under these circumstances regardless of whether it contained the requisite number of names or not. There can be no presumption indulged in by the board of county commissioners that the signers of the petition could have been

induced to sign the petition under any other condition than that the election would be held for the purpose of moving the county-seat from the town of Dayton to the city of Yerington. Relators affirm that the prayer for a removal to the city of Yerington is but a surplusage, and it could be said that it would have been fair for the board of county commissioners of Lyon County to call a special election on the petition of qualified electors and taxpayers of said county who had been induced to sign it under the guise that the city of Yerington would become the county-seat, and under no other consideration.

III. Where the language is plain, clear and unambiguous, there is no room for construction or interpretation. (*Brown* v. *Davis*, 1 Nev. 409; *Wall* v. *Blasdel*, 4 Nev. 241; *Fitch* v. *Elko County*, 8 Nev. 271; *Hess* v. *Commissioners*, 6 Nev. 104; *V. & T. R. R. Co.* v. *Lyon County*, 6 Nev. 68; *Lewis* v. *Doron*, 5 Nev. 400; *Odd Fellows Bank* v. *Quillen*, 11 Nev. 109; Sutherland, sec. 408.)

PER CURIAM:

By demurrer respondents question the sufficiency of the application for a writ of mandate by which it is sought to compel respondents to order an election for the purpose of enabling the voters of Lyon County to determine whether the county-seat should be moved.

Among other things it is alleged in the application that on the 7th day of June, 1909, there was filed with respondents, as the board of county commissioners, a petition, duly accompanied by the proper certificate of the registry agent of each of the districts where the persons signing the same resided, praying for the removal of the county-seat from the town of Dayton; that it appears by the registry lists of the several precincts 962 qualified electors were duly registered at the last election in that county, which was a special one; that in addition two qualified electors who did not register for the last election executed and filed with the registry agents of their respective precincts affidavits showing them to be qualified electors of the county; that of the qualified electors whose names appear on the registry lists of the last election, or, who, though not registered at such election, were nevertheless shown

by such affidavits on file with the registry agents of the several precincts of the county to be duly qualified electors, 404 were taxpayers, as appears by the last assessment roll; that the petition was signed by more than three-fifths of the qualified electors of the county who had taken and subscribed the oath or affirmation prescribed by law for registration of electors and whose names appeared on the last assessment roll; and that 255 of the 404 qualified electors were taxpayers as shown by the last roll and had signed the petition for removal. On June 7, 1909, the respondents, as such board of county commissioners, "ordered that the petition be denied, for the reason that it appears from the petition that less than three-fifths of the qualified electors of Lyon County were subscribers thereto."

It is provided by section 5007 of the Compiled Laws: "Whenever three-fifths of the qualified electors of any county of this state, each elector being a taxpayer of said county, as appears by the last assessment roll, who have taken and subscribed to the oath or affirmation prescribed by law for the registration of electors in this state, shall petition the board of county commissioners of such county for the removal or location of the seat of justice of said county, the said county commissioners shall, within sixty days thereafter, cause an election to be held at the various places of voting in said county, the said county commissioners giving thirty days' notice in some newspaper published in the county or by posting written or printed notices at the several voting precincts in the county. * * *" Section 5010 directs: "Every petition for the purpose mentioned in section 1 of this act shall be accompanied by the certificate of the registry agent of the district where the persons signing such petition reside, showing that all persons whose names are signed to said petition are qualified electors of said county, as appears by the registry list of said district, or the affidavits on file in his office of persons not registered at the last general or special election, but who are qualified electors of said county. * * *"

Respondents seem to rely largely upon *State* v. *County Commissioners of Eureka County*, 8 Nev. 310, and *State* v. *County Commissioners of Washoe County*, 6 Nev. 104. The statute and the facts and circumstances controlling those cases are dif-

ferent from those here. In the Eureka County case it became incumbent for the board to determine whether 500 qualified electors had signed the petition, and the statute did not make any provision for certificates by the registry agent or reference to the assessment roll, from which the number of electors might be determined ministerially, as under the statute which controls the present proceeding. These provisions may have been inserted in this later enactment for the purpose of making the action of the board ministerial and compulsory in calculating and acting upon the number of taxpaying voters as indicated by the roll and the certificates of the registry agents showing the registration of voters and the making by them of the affidavits of their qualifications, to avoid any holding by the courts that the determination by the board of whether the petitioners were in fact qualified voters, instead of whether they appeared on the roll and had registered and made the affidavit, was a judicial act, which could not be controlled. It was set up as a defense there that 138 of the signers had asked that their names be withdrawn, leaving the number of signers less than the required 500. In the application, which is deemed true so far as the demurrer is concerned, it is alleged that the required number of qualified taxpaying voters signed the petition, and so far there is no showing that the requisite number have not petitioned, or that some have withdrawn, so that the necessary number do not remain as petitioners. This leaves the respondents as admitting that three-fifths of the taxpaying qualified voters as shown by the tax roll and registry lists have petitioned, and yet contending that they need not call an election, as they are directed to do by the statute when that proportion of this class of voters petition. The reason designated in the order of the board for refusing to call an election, namely, that three-fifths of the qualified voters had not petitioned, does not excuse compliance with the demand of section 5007 that an election be called if petitioned for by three-fifths of the qualified taxpaying voters as shown by the roll and certificates of registration.

In the Hess or Washoe County case, the board called an election for a time more distant than provided by statute, and

it was held to be without that power. As the refusal of the respondents here to call an election presents a somewhat different question, we need neither follow nor overrule that case. However, we are of the opinion, if an act of the legislature directs a board to do a certain act upon the arising of a contingency, and it is not disputed that the conditions as intended by the legislature have arisen, and the statute vests no discretion in the board, it makes the act a ministerial one, and the board can be compelled to comply with the statute, and cannot be excused from such compliance by asserting their failure to comply within the time prescribed by the act.

In *State* v. *Young*, 6 S. D. 406, 61 N. W. 165, it was held that the designation of a day for an election is so far directory that, if from any cause no election is held on that day, it is the duty of the board to call an election at the earliest day practicable thereafter and make the necessary provisions therefor.

Quoting in part with approval from high authority, the Supreme Court of Florida, in *McConihe* v. *McMurray*, 17 Fla. 261, said: " 'So in this country it has been held that an election of municipal officers may be held after the charter day, and that a *mandamus* may be granted to compel the proper officers to give notice thereof.' (2 Dillon's Municip. Corp. 675; Tap. on Mandamus, p. 165.) * * * Nor is it any objection that the precise date at which the election was to be held has passed. (4 East, 142; *State* v. *Baltimore County Commissioners*, 29 Md. 523.) Such a doctrine would practically abolish the remedy by *mandamus* in such cases. The writ does not lie before, but only after, default in the performance of a ministerial duty (Tap. Man. 290; 8 A. and E. 911); and, if it be a good defense to allege that the time fixed for its performance has passed, it is evident that the very ground upon which you must base your application for the writ becomes a sufficient reply to the alternative writ when granted." See, also, cases there cited, and *People* v. *Trustees of the Town of Fairbury*, 51 Ill. 149; *People* v. *Schiellein*, 95 N. Y. 124; 26 Cyc. 272.

We are unable to agree with respondents' contention that section 5007 requires that the petition for removal of county-

seats be signed by a number of qualified electors shown on the roll to be taxpayers equivalent to three-fifths of all the voters in the county. It was contended, and admitted on the argument, that such construction would in effect nullify the act, because in no county in the state are three-fifths of the voters taxpayers. In the language at the beginning of section 5007, that "whenever three-fifths of the qualified electors of any county of this state, each elector being a taxpayer of said county, as appears by the last assessment roll, who have taken and subscribed to the oath or affirmation prescribed by law for the registration of electors in this state, shall petition," the words "each elector being a taxpayer of said county" would naturally be held to relate, under the well-known rule of construction, to the word "electors" in the first line, which it follows, more closely than to "three-fifths," which is the second word in the section. If the meaning were doubtful a similar construction would be placed upon the statute, under the rule that courts will so construe the language as to give effect to, rather than nullify, an act of the legislature. It would seem that respondents took a different view; for the only reason for denying the petition stated in their order is that "it was not signed by three-fifths of the qualified electors of the county." We think that the allegation that it was signed by three-fifths of the qualified taxpaying electors of the county, as shown by the last assessment roll, who had taken and subscribed the oath or affirmation prescribed for the registration of electors, if true, and they had not withdrawn, was sufficient to require the board to order the election, and that the determination of the questions as to whether the singers were on the last assessment roll, and as to whether they had taken and subscribed to the oath or affirmation prescribed by law for the registration of electors, when this fact was certified by the registry agent under section 5010, were ministerial acts. It was evidently the intention of the legislature to require a petition of three-fifths of the taxpaying voters, who would have to contribute to the expense of changing the county-seat and of an election, to petition before one could be called, and in addition to require a majority of all the voters at the election to favor removal before a county-seat could be removed. If the con-

struction for which respondents contend were correct, and if
taxpaying voters equivalent to three-fifths of all the voters in
the county must petition before an election can be ordered, it
would seem vain and useless to have an election held, when
one would require the expression of the wishes of a less num-
ber of voters than had already petitioned for removal.    If the
legislature had intended to require that the petition be signed
by taxpaying voters equivalent to three-fifths of all the voters
in the county, it is apparent that the statute would have
been so framed as to require the board of county commis-
sioners to remove the county-seat on the filing of a petition
so signed, without requiring in addition the formality and
expense of an election, which would not result differently and
would be useless.

Counsel for respondents have sought to rely upon the well-
established rule that *mandamus* will lie to compel a board to
act, but not how to act; and it is urged that, as the board
has already acted and denied the petition, it has exhausted
its jurisdiction and cannot be required to act again.    This
would be true, if the act were of a judicial nature and vested
the board with discretionary powers; but it confers none,
and the language is positive in directing the board to call an
election if a petition is filed by three-fifths of the voting
taxpayers as shown by the roll and registration certified.
(26 Cyc. 192.)

The demurrer is overruled.