[No. 2153]

THE STATE OF NEVADA, Ex Rel. CENTRAL
    PACIFIC RAILWAY COMPANY (a Corporation),
    Relator v. THE NEVADA TAX COMMISSION,
    Respondent.

[145 Pac. 905]

1. Taxation—Assessment—Valuation—Statutes.
        Rev. Laws, sec. 3624, directing the assessor to determine
    the true cash value of the property, does not control section
    3838, subsequently enacted, which provides that no patented
    or state contract land shall be assessed for less than $1.25
    per acre.

2. Taxation — Assessment — Valuation — Statutes — "Cash
    Value."
        Stats. 1913, c. 134, creating a state tax commission with
    power to district the state geographically in assessment dis-
    tricts according to relative uniformity of land valuation, and
    establish minimum acreage valuations for the classes in each
    district, and that if, in the opinion of the commission, any
    tract, by reason of special conditions, would be improperly
    assessed by the application of the classified acreage valuations,
    the tract may be excluded therefrom and specially appraised,
    and providing that property shall be assessed at its true full

"cash value," defined to mean the valuation in money which
an investor in such character of property would be reasonably
willing to pay therefor, implies that the commission may fix
the valuation lower than the minimum of $1.25 per acre, as
fixed by Rev. Laws, sec. 3838, and an owner feeling aggrieved
on the ground that the minimum is too high, may appear before
the commission and prove that the cash valuation is less than
the minimum, and, on the commission so finding, they must
make a deduction in the valuation accordingly, and to this
extent section 3838 is superseded, but it still applies to county
assessors making the original assessment.

3. STATUTES—CONSTRUCTION.
    Two statutes on the same subject must be construed together,
    so as to give effect to the language of both, as far as con-
    sistent, and where a conflict is apparent, the later statute
    controls.

4. CONSTITUTIONAL LAW—VALIDITY OF STATUTES—NECESSITY FOR
    ADJUDICATION.
    Constitutional questions, not necessary for an adjudication
    of the rights of the parties, will not be determined.

ORIGINAL PROCEEDING.  Application for writ of man-
date by the State, on the relation of the Central Pacific
Railway Company, against the Nevada Tax Commission
and others.  **Writ granted.**

*Brown & Belford,* for Relator.

*Geo. B. Thatcher,* Attorney-General, for Respondents.

By the Court, TALBOT, C. J.:

In its application for a writ of mandate, directing
respondents, as Nevada Tax Commission, to give relator
a hearing and allow the introduction of evidence regard-
ing the value for taxation of relator's lands, granted by
act of Congress July 2, 1864 (13 Stat. 365, c. 217), to aid
in the construction of the Central Pacific Railroad, it is
in effect alleged:  That the Central Pacific Railway Com-
pany owns and for the year 1914 has returned to the
assessor of Churchill County for assessment 246,607.91
acres of patented lands and 132,228.60 acres of unpat-
ented lands, situated in Churchill County; that the
assessor assessed the patented lands at $2.50 per acre
and the unpatented lands at $1.25 per acre, producing

an aggregate assessment of $718,808 upon the lands of petitioner in that county; that thereafter, and on September 28, 1914, petitioner appeared before the board of county commissioners of Churchill County, sitting as a board of equalization, and filed two written applications for the reduction of the assessed valuations as fixed by the assessor, and offered testimony as to the value of these lands. On a large part and more than 100 sections of the lands assessed at $2.50 per acre, or $1,600 per section of 640 acres, and the lands assessed at $1.25 per acre, or $800 per section, the company asked to have the assessed valuation reduced to $10 per section. The board refused to consider the petitions for the reason given by the board that section 3838 of the Revised Laws of Nevada requires that the minimum value placed on all lands for assessment purposes shall be $1.25 per acre.

On October 13, 1914, petitioner presented its petition in writing to the Nevada Tax Commission, asking for the reduction of the assessment on the lands in Churchill County, described in the petitions presented to the county board of equalization, to values of less than $1.25 per acre. The commission refused to hear the petition, for the reason, as entered in its minutes, that it appeared to the commission that section 3838 of the Revised Laws requires that the minimum value placed on all lands for assessment purposes shall be $1.25 per acre.

On behalf of the relator, it is urged that section 3838 of Revised Laws, in so far as it provides that all lands shall be assessed at not less than $1.25 per acre, is in conflict with section 3624 of Revised Laws and in conflict with section 8 of the act of the last legislature creating the Nevada Tax Commission (Stats. 1913, c. 134), and is also unconstitutional because it does not meet the requirement of uniformity under section 1 of article 10 of the state constitution, and also in conflict with section 1 of the fourteenth amendment to the constitution of the United States in that it deprives relator of property without due process of law, and denies to relator and all other owners of land within the state, whose

value is less than $1.25 per acre, the equal protection of the laws.

[1] Section 3624 of the Revised Laws of Nevada, as amended in 1893, which directs that the assessor shall determine the true cash value of the property, is not regarded as controlling section 3838, which was passed in 1911, and which provides that no patented or state contract land shall be assessed for less than $1.25 per acre.

[2] It is more important to consider the provisions of the act of 1913, creating the Nevada Tax Commission, and defining its powers and duties. Section 5 of this act provides that the commission may "district the state geographically in land assessment districts  *  *  * according to relative uniformity of land valuations, and establish minimum acreage valuations for such classes in each such district; *provided,* that if in the opinion of said commission any tract of land, by reason of special conditions would be improperly assessed by the application of such classified acreage valuations, such tract may be excluded therefrom and specially appraised."

Section 8 of the same act provides that all property subject to taxation shall be assessed at its full cash value, and defines the term "cash value" to mean the valuation in money which an investor in such character of property would be reasonably willing to pay therefor in order to acquire ownership. We are not unmindful that an earlier special provision may control a later general one. But, as between the two special provisions relating to the minimum acreage valuation, we conclude that the one passed by the last legislature, and providing that the commission may fix such minimum valuation and specially appraise lands, controls or supersedes, so far as the duties and powers of the commission are concerned, the act of the prior legislature which fixed the minimum valuation of all lands at $1.25 per acre. As that was the minimum price fixed by the general government and by the state for the sale of lands, the legislature of 1911 may have concluded that all patented or contract land

was worth at least that much. Without modification, the statute still stands directing the assessor in the first instance to assess all lands at not less than $1.25 per acre.

Section 5 of the act of 1913 authorizes the commission, but not the assessor, to fix the minimum acreage valuation, which implies that the commission may fix it lower than $1.25 per acre. It follows that any owner, feeling aggrieved and that the minimum of $1.25 is too high, should be allowed to appear before the commission and prove that the cash valuation on his land is less than $1.25 per acre, and, if the commission finds that the land is worth less than such minimum, a deduction in the valuation should be made accordingly.

[3] The two acts of the legislature should be construed together, so as to give effect to the language of both, as far as consistent, and, where a conflict is apparent, the later statute will control. (*State* v. *LaGrave,* 23 Nev. 373, 48 Pac. 193, 674; *Hettel* v. *District Court,* 30 Nev. 382, 96 Pac 1062, 133 Am. St. Rep. 731; *State* v. *Martin,* 31 Nev. 493, 103 Pac. 840; *Ex Parte Prosole,* 32 Nev. 378, 108 Pac. 630; *State* v. *Glenn,* 18 Nev. 34, 1 Pac. 186.)

The act of 1911 may stand, so far as it applies to county assessors making the original assessment at a minimum of $1.25 per acre, because there is nothing in the later act varying it in this regard; but as the Nevada Tax Commission, a final board of equalization, is authorized by the act of 1913 to establish minimum acreage valuations and specially appraise lands, it is the duty of the commission to fix the proper minimum valuation at the full cash value, although this may be less than $1.25 per acre.

[4] Following precedent, the constitutional questions involved are not determined because not necessary for an adjudication of petitioner's right to the writ.

By reason of these views, the court has directed the commission to hear the proofs of petitioner regarding the valuations of the lands and to fix the valuations in accordance with the proofs.