[Nos. 2441 and 2442]

## CAREY VAN FLEET, APPELLANT, *v.* JAMES P. O'NEIL, RESPONDENT.

[192 Pac. 384]

1. EVIDENCE—CROSS-EXAMINATION OF ATTORNEY, SUING FOR SERVICES, AS TO HIS OPINION OF CERTAIN LEGAL DECISIONS, IMPROPER.

Plaintiff in an action for legal services, who as a witness for himself had stated his training and experience as a lawyer, the services that he claimed to have rendered, and his opinion of their value, may not, on cross-examination, be asked as to whether as an expert he agreed with certain decisions of courts of other jurisdictions on the reasonableness of attorney's fees, as his opinion as to the correctness thereof would not tend to test his knowledge concerning the subject-matter of his testimony.

2. EVIDENCE—THOUGH FACTS WERE NOT ESTABLISHED, THEY MAY BE USED IN HYPOTHETICAL QUESTION.

Hypothetical questions to plaintiff's experts may assume facts based on plaintiff's testimony, though whether the facts are really established is for the jury to determine.

3. APPEAL AND ERROR — LEADING QUESTION HELD HARMLESS, IN VIEW OF TESTIMONY OF OTHER WITNESSES.

Leading question to one of plaintiff's experts as to whether a certain amount would be a reasonable fee was harmless; none of the other witnesses, on proper questions, having testified to a smaller amount as a reasonable fee.

4. EVIDENCE — QUESTION TO EXPERT ON CROSS-EXAMINATION TOO GENERAL.

An expert, who on direct examination had testified to what would be a reasonable fee for taking deposition under recited circumstances, may not, on cross-examination, be asked as to what would ordinarily be a reasonable per diem fee for taking a deposition .in an ordinary case: the question being too general to have elicited testimony that would have affected his answer to the hypothetical question.

5. WITNESSES—REFUSAL OF CROSS-EXAMINATION TO SHOW FRIEND-
LINESS TO PLAINTIFF HELD PERMISSIBLE. .

Refusal to allow attorneys, testifying for plaintiff attorney
in an action for fees, to be asked on cross-examination as to
their participation in a meeting of the bar association to
appoint an attorney to defend plaintiff against a pending
charge, and as to one of them there volunteering to serve as
his attorney, was at least in the court's discretion; it not
following that any such acts of friendliness would affect their
credibility, and the matter sought to be elicited having a ten-
dency to prejudice plaintiff with the jury.

6. ATTORNEY AND CLIENT—AMOUNT IN CONTROVERSY MAY AFFECT
VALUE OF SERVICES.

Increased care and responsibility, arising from amount in
controversy, is an element that may be considered in fixing
reasonable value of attorney's services.

7. ATTORNEY AND CLIENT—INSTRUCTION AS TO INCREASED CARE AND
RESPONSIBILITY FROM AMOUNT INVOLVED AS AFFECTING ATTOR-
NEY'S FEE HELD APPLICABLE TO EVIDENCE.

Evidence in action for attorney's services *held* to make
applicable an instruction as to increased care and responsi-
bility from amount involved being an element to be con-
sidered in fixing reasonable value of attorney's services.

8. TRIAL—REQUESTED INSTRUCTION NOT PERTINENT TO EVIDENCE
PROPERLY REFUSED.

A requested instruction is properly refused, there being no
evidence to which it is pertinent.

9. NEW TRIAL—EXCESSIVE DAMAGES MUST BE PRODUCED BY PASSION.

By the express provision of Rev. Laws, 5320, subd. 5, a
new trial may be ordered, on the ground of excessive damages,
only when such damages appear to have been given under the
influence of passion or prejudice.

10. NEW TRIAL—EXCESSIVE DAMAGES NOT REDUCED, UNLESS GROUND
FOR NEW TRIAL.

A verdict cannot be reduced on the ground of excessive
damages, unless a new trial can properly be granted on that
ground.

11. NEW TRIAL—CONDITIONAL NEW TRIAL FOR EXCESSIVE VERDICT
LIMITED TO DAMAGE CASES, WITH A SINGLE EXCEPTION.

The discretion of a trial court to order a plaintiff to remit
a portion of the verdict deemed excessive as a condition for
refusing a new trial is limited to damage cases, except where,
from mistake or other cause, the verdict is clearly excessive
under the evidence, and the excess capable of being ascer-
tained by the court without encroaching on the province of the
jury.

12. NEW TRIAL—ORDER OF REMISSION OF PART RECOVERY NOT PER-
MISSIBLE, WHERE MOTION IS FOR INSUFFICIENT EVIDENCE.

Motion for a new trial being on the ground of insufficiency
of the evidence to justify the verdict, the court was confined

to granting or refusing a new trial, and could not require a remission of part of the amount of the verdict as a condition to refusal of new trial.

APPEAL from Fourth Judicial District Court, Elko County; *E. J. L. Taber,* Judge.

Action by Carey Van Fleet against James O'Neil. From a judgment for plaintiff defendant appeals; and from an order on motion for a new trial, both parties appeal. **Affirmed on defendant's appeal, and reversed on plaintiff's appeal, and verdict and judgment, so far as affected by order, restored. Petition for rehearing denied.**

*Edwin E. Caine* and *G. F. Talbot,* for Appellant:

The court should have allowed answers to questions on cross-examination as to whether an expert witness agreed with certain decisions determining fees of attorneys in other cases. Pinney v. Cahill, 48 Mich. 584; 3 Jones on Evidence, 579.

Objections to long hypothetical questions to plaintiff's expert witnesses should have been sustained, such questions being leading, uncertain, and indefinite. Opinions of experts must be predicated upon the facts established by the proof in the case. Champ v. Commonwealth, 59 Ky. 17; 1 Greenleaf, Evidence, 16th ed. sec. 441, p. 561. There must be evidence for all the facts assumed. Russ v. R. R. Co., 112 Mo. 45; Guetig v. State, 66 Ind. 104; Railroad v. Falvey, 104 Ind. 420; Economy Co. v. Sheridan, 200 Ill. 439; Mago v. Wright, 53 Mich. 43. A question assuming facts neither proven nor existing is improper. Nichols v. R. Co., 25 Utah, 240. It is error in a hypothetical question to instance facts different from those shown by the evidence. Pients v. Bates, 88 Mich. 567. In an action to recover an attorney's fee, a hypothetical question assuming the great future value to the defendant of the service for which compensation is claimed is improper. Haish v. Munday, 12 Ill. App. 529. A hypothetical question must be excluded if it

covers a single material fact not evidenced. State v. Hanley, 34 Minn. 433.

Refusal to allow cross-examination of a witness upon matters brought out on direct examination, and relevant to the issue, is a denial of an absolute right, and has been generally held to be a sufficient ground for reversal. 25 L. R. A. 683. On cross-examination, opinions of expert witnesses on part of the facts in chief may be required, and questions on cross-examination cannot be confined to any particular part of the facts in hypothetical questions in chief. Louisville R. Co. v. Falvey, 104 Ind. 404, 3 N. E. 389.

The rule is general that any question may be put to a witness on cross-examination, the answer to which may have a tendency to show bias or prejudice on the part of the witness. State v. Krum, 32 Kan. 372; Oleson v. Oregon Short Line, 24 Utah, 460; 1 Greenleaf, Evidence, sec. 450. Questions tending to disclose animus or bias of the witness are proper on cross-examination, and should be allowed. Hampton v. State, 50 Fla. 55. For the purpose of discrediting a witness, a wide range of cross-examination is allowed as a matter of right in regard to his motives, interest, or animus, as connected with the cause or parties. Pittman v. State, 41 South. 385; Blanchard v. Blanchard, 191 Ill. 450; Kennedy v. Murphy, 112 Ill. App. 607; Johnson v. Haley, 74 Ind. 233; Crumpton v. State, 52 Ark. 272; Ataker v. Hogan, 120 Ind. 207; Lytton v. Wright, 127 Ind. 81; Farm M. Co. v. Batchelder, 68 Vt. 430.

Strong prejudice on the part of an expert witness might render him absolutely incompetent, instead of merely affecting his credibility and the value of his evidence. United States v. Mathias, 36 Fed. 892.

The "mental-anxiety" instruction given by the court on the trial was improper and unfair. Berryman v. Cox, 73 Mo. App. 67; Laidlaw v. Page, 158 N. Y. 73.

It was error to refuse instruction as to useless service rendered by plaintiff. Leo v. Leyser, 73 N. Y. S. 941.

The court should have given the instruction to the effect that an attorney is without authority to compromise his client's case unless he is specially authorized by his client. Rogers v. Pettigrew, 75 S. E. 631; State v. Cal. M. Co., 15 Nev. 243; Pomeroy v. Prescott, 138 Am. St. 352; Penman v. Patchin, 5 Vt. 346.

The evidence fails to support the verdict and the judgment, and by reason thereof the court should have granted a new trial unconditionally. The question of the excess of the verdict was raised upon the ground relating to the insufficiency of the evidence.

*J. M. McNamara,* for Respondent:

There was no error in the refusal of the court to allow reference to decisions on cross-examination of experts. "It would be a mere evasion of the general rule * * * if counsel were allowed on cross-examination to read to the witness portions of such works, and to ask if he concurred in or differed from the opinions there expressed; hence this is not allowed." Jones, Evidence, vol. 3, sec. 579.

The hypothetical questions were not indefinite. Idem, vol. 2, secs. 370–371; Sandro v. Missoula L. & W. Co., 157 Pac. 641; Kelley v. Daily Co., 181 Pac. 331.

The court was not in error in refusing to allow questions as to bias of the attorneys testifying in respondent's favor. This was entirely a matter of discretion for the court. Blue Book of Evidence, vol. 5, sec. 829. "Obviously, testimony collateral to the issues which would merely tend to prejudice the jury should be rejected." Idem, vol. 1, sec. 137, p. 674.

The "mental-anxiety" instruction was proper; and responsibility includes mental anxiety and mental labor. With increased responsibility there follows increased mental anxiety and increased mental labor. 6 C. J. 751; Eggleston v. Boardman, 37 Mich. 14; Quint v. Ophir S. M. Co., 4 Nev. 304.

There was no evidence that the respondent's labor was useless, and it would therefore have been error for

the court to have instructed on this point as requested, as it would have been an instruction upon a state of facts not developed by the evidence.    Quint v. Ophir S. M. Co., supra.

No question of the excess of the verdict was raised in the lower court, and it is not properly raised here. The verdict of the jury was upheld by the trial court to the extent of $2,500, and the verdict was not set aside upon the ground of insufficiency of evidence.   This court will not, therefore, examine into this question.   "There is a conflict in the testimony as to what would be a reasonable compensation for the services rendered by the plaintiffs; and although the preponderance of evidence may not be in favor of the verdict, there is at least sufficient to support it.   The law is now thoroughly settled that a verdict will not be set aside by an appellate court upon this ground when the lower court has refused to do so, unless there is such a decided preponderance of evidence against it as to create a conviction that it was the result of mistake or misconduct on the part of the jury. *   *   *   Upon this ground, therefore, the verdict cannot be set aside."   Quint v. Ophir S. M. Co., supra.

On motion for a new trial, the lower court made a conditional order, reducing the amount of the verdict. An appeal may be taken from said order.   De Severinus v. Press P. Co., 132 N. Y. S. 80; Wooding v. Thom, 132 N. Y. S. 50.   The court assigned certain reasons for its order.   It did not find that the evidence was insufficient to justify the verdict, and did not disturb the verdict by reason of any lack of evidence, although the evidence was conflicting.   The reasons for the granting of a new trial having been specified, this court cannot indulge the presumption that the motion was granted upon any other ground.   James v. Butcher, 215 S. W. 768.   The question of an excessive verdict was not raised on the motion for a new trial, and the court therefore erred in considering any grounds not stated in said motion, in the memorandum of errors, or in the

argument. Colo. & S. R. Co. v. Jenkins, 138 Pac. 439.
A verdict cannot be set aside simply because excessive,
but can be disturbed only when it is also found that the
excess of award is due to passion or prejudice. Colo. &
S. R. Co. v. Jenkins, supra; Tunnel M. Co. v. Cooper,
115 Pac. 902; Henderson v. Drafus, 184 Pac. 819; Rev.
Laws, 5320; Standard Ency. Proc., vol. 20, p. 602; Davis
v. Montgomery, 24 N. E. 367; Riverside Coal Co. v.
Holmes, 55 N. W. 255; Pocos v. N. T. R. Co., 153 S. W.
185; English v. Railroad, 104 N. W. 886; Hammond v.
Edwards, 77 N. W. 75; Stoteman v. Thomas Mfg. Co.,
34 N. W. 225.

It is a universal rule, laid down by this court in
many cases, that it will not disturb the verdict of a jury
rendered upon conflicting evidence. Nelson v. Smith,
42 Nev. 302; Spinney v. Derrick, 105 Atl. 105; Matthews
Turpentine Co. v. Keefe, 81 South. 852; Gluck v. Hatch-
ner, 176 N. Y. S. 756; Johnston v. Mayfair F. Co., 175
N. Y. S. 494.

By the Court, DUCKER, J.:

This is a cross - appeal, and it will therefore be
convenient to allude to the parties herein as they were
designated in the lower court. Plaintiff is an attorney
at law, and brought this action in the district court
in Elko County to recover from the defendant the sum
of $3,500 for legal services alleged to have been per-
formed by plaintiff for the defendant at his request in
the case of Mary Alice Capell and Charles S. Capell,
complainants, against Wm. T. O'Neil, Richard C. O'Neil,
and James P. O'Neil, defendants, in the District Court
of the United States for the District of Nevada, in
equity, and in the settlement thereof, and in the incor-
poration of O'Neil Bros., Incorporated. It is alleged in
the complaint that the said services were reasonably
worth the sum of $4,000, no part of which has been paid,
except the sum of $500.

The jury returned a verdict in favor of plaintiff for
$3,500 and interest, as prayed for in the complaint.

Judgment was entered in accordance with the verdict. The defendant moved for a new trial, and in deciding this motion the lower court made and entered the following order, viz:

"In decision on defendant's motion for a new trial, court ordered that if the plaintiff, on or before December 31, 1919, file a remittitur in the amount of one thousand dollars, a new trial will be refused, and the verdict to stand for the residue, to wit, twenty-five hundred dollars; if the remittitur be not filed, court ordered that a new trial shall be granted."

From this order, and the judgment entered, defendant appeals. Plaintiff appeals from the order only.

1. We will first consider the case with reference to defendant's appeal. Plaintiff was a witness in his own behalf, and in his testimony detailed at length his training and experience as an attorney, the legal services he claims to have rendered the defendant with reference to the matters alleged in the complaint, and also gave his opinion as to the value of such services.

Defendant complains of the action of the court in refusing to allow plaintiff to answer questions on cross-examination as to whether, as an expert witness, he agreed with certain decisions of courts of other jurisdictions determining the reasonable value of attorney fees. A number of similar questions were asked, to which objections were sustained by the court. The following is a sample of the general nature of the questions ruled out:

"Q. Do you agree with the court in the case of Carson v. Cockrell, reported in 56 S. E. 1034, where $500 was held to be a reasonable fee for prosecuting a hardly contested suit for damages, and judgment obtained of $4,000 in the supreme court after two trials in the lower court?"

It has been held competent, upon cross-examination to test the learning and accuracy of a witness testifying as an expert and to determine the weight of his testimony, to read excerpts from standard authorities upon

the subject-matter involved, and asking him whether he agreed or disagreed with the authorities, and then comparing his opinion with that of the writer. This is the rule supported by some of the authorities cited by defendant; but it is obvious that it can have no application in the present case. Assuming that the plaintiff was testifying as an expert when he gave his opinion as to the value of his own services, the questions propounded could be competent only upon the theory that the answers would tend to test the knowledge of the witness concerning the subject-matter of his testimony. Now, it must be obvious that his opinion as to the correctness of the rulings of different courts on the reasonableness of attorney fees would serve no such purpose. What is a reasonable attorney fee in one case is no criterion for another. Each case rests on its own facts, and what is held reasonable in one jurisdiction may, under the same state of facts, be considered unreasonable in another jurisdiction. Plaintiff, therefore, might have agreed or disagreed with the rulings in any or all of the cases embodied in the questions, and his disagreement or concurrence have furnished no test of his learning in the law concerning the subject-matter of his testimony. The objections were properly sustained.

2. Four attorneys of the local bar of Elko County, and one from Salt Lake City, Utah, testified on behalf of plaintiff, as expert witnesses on the question of the reasonable value of his services. No objection was taken to the qualifications of any of these witnesses. A hypothetical question, which defendant claims was improper, was addressed to and answered by each of these witnesses. It is insisted that the questions were in some respects indefinite as to the extent of services and were leading in form. It is also asserted that the questions were objectionable, because they assumed matters not in evidence and included statements of services for which the defendant was not liable. The questions are altogether too long to set out in this opinion, but, generally speaking, they include the extent of plaintiff's

legal training and his experience as a practitioner, the general nature of the controversy, the interests involved, including the amount over and above that asserted by defendant to be due him, claimed to have been gained by the skill and diligence of plaintiff, and a statement of the legal services rendered the defendant.

From a careful survey of the record we can say that the facts asserted in the question are sufficiently supported by evidence. Many of the facts assumed are based upon the plaintiff's testimony, it is true, but were nevertheless relevant and competent to prove his theory of what constituted the facts of the case. Whether they were really established by the evidence in the case was a question for the jury, and ultimately bearing upon the weight to be given the opinion of the expert witness, resting upon such assumed state of facts.

3. There is no merit in the objection that the question is indefinite in parts. It is general in the respects criticized, but not indefinite. The interrogatory, when first asked and answered over defendant's objection, concluded as follows:

"Assuming these to be facts, would a fee charged by such attorney, in the amount of $4,000, be reasonable or unreasonable?"

For this reason defendant insists that the interrogatory is leading. This part of the question was subsequently modified to read substantially thus:

"Now, assuming the facts there to be true, what would you consider a reasonable fee for an attorney with the qualifications of the attorney in question for the services rendered?"

—and as so modified was propounded to and answered by the other attorneys who testified as witnesses for plaintiff. No further objection was made to the question on this ground. This branch of the question in its modified form was entirely proper, and, while in its original form it might have been considered leading in that the incorporation of the amount claimed by plaintiff was more or less suggestive of the answer required,

we are not prepared to say that it was so improper in this respect as to warrant a reversal of the case. Some discretion must be used on this subject, and overnicety is not conducive to convenience or justice. McKeown v. Harvey, 40 Mich. 226. Moreover, as previously stated, the question was modified to meet the objection of counsel in this regard, and, as the record discloses, that, of the four expert witnesses for plaintiff, none placed the value of plaintiff's services lower than that fixed by the first witness, and some gave a higher valuation, the probability of prejudice to the defendant by the allowance of the interrogatory as first formed is so extremely remote that we conclude no injury resulted.

4. Counsel for defendant, on cross - examination, asked the following questions of Judge Mitchell, a witness for plaintiff, to which objections were sustained by the lower court:

"Q. Judge Mitchell, what ordinarily would be the fee, the reasonable fee, for an attorney in attending the taking of a deposition for one afternoon?"

"Q. Judge Mitchell, ordinarily what would be a reasonable fee per diem for an attorney in taking the deposition of a witness in ordinary cases?"

The hypothetical question addressed to the witness contained a statement of services rendered in connection with the matter of taking a deposition of the parties to the suit in accordance with the procedure of the federal district court. In these statements it was assumed that plaintiff attended said district court at a place far distant from his place of business, for the purpose of settling the matter of taking the deposition, and was away from his place of business for a day at least, and that thereafter, when the hearing of the deposition came on in a city far distant from his place of business, he attended such hearing to protect the interests of his client.

It is contended that the questions were proper on cross-examination by reason of the foregoing direct

examination, and that the refusal of the court to allow
the questions was error.  The questions had no refer-
ence to the taking of a deposition as referred to in the
direct examination, and were too general to have elicited
testimony that would have affected the witness's answer
to the hypothetical question.  If the witness had been
permitted to answer these questions, his testimony in
this regard would have furnished no aid to the jury in
testing the direct testimony of the witness, because the
reasonableness of an attorney's fee in attending to
the taking of a deposition would vary as widely as the
circumstances surrounding the situation might vary.
What would be a reasonable fee in one case would be
unreasonable in another.  There was no error in the
rulings on these questions.

5.  Error is assigned in the refusal of the court to
allow a number of questions asked on cross-examination
of several of the attorneys, who testified for plaintiff,
as to their participation in a meeting of the Bar Asso-
ciation of Elko County, held, it is asserted, for the
purpose of appointing an attorney to defend plaintiff,
who was then involved in some kind of trouble.  One of
these witnesses was also asked if he did not volunteer
to help the plaintiff in the matter by serving as his
attorney.  It is argued that this line of cross-examina-
tion was proper, as showing a friendly feeling toward
plaintiff, and thus bearing upon the credibility of the
witnesses.  The legal right of a party to impeach the
impartiality of an adverse witness is elementary law.
A witness may always be asked by the cross-examiner
as to his state of mind for or against any of the parties,
and he may be examined concerning matters which
may evidence his bias or prejudice.  But it appears that
the facts which defendant tried to establish by the ques-
tions as indicating bias, if shown, would have been of
doubtful probative value.  Assuming that the witnesses
interrogated in this respect had attended a meeting of
the bar association held for the purpose of appointing

an attorney to defend the plaintiff, and one of them had volunteered his services in this regard, it does not follow that these are such acts of friendliness between attorneys, who are members of the same local bar association, as would affect their credibility. Their action denoted that they reposed confidence in the plaintiff and considered him innocent of whatever charges were pending against him, but that they might therefore favor him as a witness by inflating the value of his legal services in a civil suit entirely unrelated to the trouble in which he was involved, is a very doubtful inference to indulge. At the most, as the matter sought to be elicited by the questions would have had a tendency to prejudice the plaintiff before the jury, it was within the discretion of the court to rule out the entire inquiry.

6, 7. Exception was taken to the following instruction, offered by plaintiff and given by the court:

"You are hereby instructed that it is very evident that the responsibility, the care, anxiety, and mental labor, is much greater in a case where the amount in controversy is large than where it is insignificant, although perhaps the same questions might be raised in each case, or the more difficult questions arise in the case where the amount was of slight consequence. Nor is this responsibility, care, and mental labor dependent alone upon the number of hours or days which may be given to the preparation or attention to the business in which the services were rendered. This responsibility and mental anxiety is not so imaginative and shadowy that it would not be considered in arriving at a proper compensation to be allowed in fixing the value of the services rendered. For example, it goes without saying that a larger amount is reasonable compensation for the same professional services where the amount at stake is $50,000 than where it is $50."

This instruction is taken almost literally from the well-reasoned opinion of the court in Eggleston et al. v. Boardman, 37 Mich. 14, concurred in by Chief Justice Cooley, in which the increased care and responsibility

arising from the real nature of the questions which an attorney was called on to investigate, and the amount in controversy, as elements to be regarded in determining the reasonable value of his legal services, were considered at length. The instruction correctly states the law in this respect. 6 C. J. 751; Ward v. Kohn, 58 Fed. 462–465, 7 C. C. A. 314; Quint v. Ophir Mining Co., 4 Nev. 304.

We do not understand counsel for the defendant to challenge the correctness of .the instruction as abstract law. If we correctly apprehend his position, he insists that the evidence does not sustain plaintiff's contentions that the amount in controversy was large, and that by his ability and fidelity to his client's interests he secured a large amount for the defendant, by compromise, in excess of what the latter was at all times willing to accept as his just share of the property. From these premises counsel for defendant argues that the instruction was misleading and prejudicial, in that it must have led the jury to believe that the amount in controversy was large, and the benefits resulting from plaintiff's services great, contrary to the evidence. The assertion that there was no large amount in controversy in so far as the defendant was concerned, in the suit instituted by his sister and brother against himself and two brothers in the federal court, in which a receivership, accounting, determination of partnership interests, and dissolution of the partnership were asked, is based upon the claim that the defendant, in the answer filed by him, raised no issue regarding any amount, declined to contest, and exhibited a willingness to abide by any terms or settlement made by the sister and other brothers, so long as his claim to a one-fifth interest in the partnership property was recognized. We may concede that this construction may be placed upon the defendant's answer in the dissolution suit, and that the other evidence in the case bears it out, but nevertheless we cannot say that the defendant did not stand to lose or gain a large amount in the result of the litigation.

The partnership property was extensive and valuable, consisting of ranch properties and equipment, water rights, cattle, horses, and sheep. In the compromise that was finally effected, their interests were fixed on the basis of a $600,000 valuation for the entire property. True, the evidence shows that none of the litigants at any time disputed the defendant's claim to a one-fifth interest, but the evidence also discloses that one of the brothers in the dissolution suit, Wm. T. O'Neil, was very determined in his opposition to the claims of the complainants. It appears that the partnership was a going and prosperous business, which had been successfully managed for many years. The complainants asked in their suit that this property be sold and the copartnership debts and liabilities be paid and discharged, and the surplus divided among the several partners. In the compromise settlement defendant's interest was determined to be a one-fourth interest, which, on the basis of the $600,000 valuation, was equivalent to a gain of $30,000 in excess of his claim of a one-fifth interest. Consequently it is quite probable that, if the litigation among the brothers and sister had gone to a final determination, and the copartnership property sold under the order of the court, the defendant would have suffered considerable financial loss. Under such circumstances, appearing in the evidence or fairly deducible from the facts proved, the instruction was applicable, and, in our opinion, could not have misled the jury.

8. Exceptions were taken by the defendant to the action of the court in refusing to give to the jury two instructions prepared by defendant. The first instruction, offered by the defendant and refused by the court, reads as follows:

"The court instructs the jury that if an attorney, who through inadvertence or mistake devotes time or does work which is entirely useless, he cannot recover any remuneration therefor."

As appears by the endorsement thereon, the trial court refused this proposed instruction because he

considered it not pertinent. The ruling is correct. There is no evidence in the record tending to show that the plaintiff, in rendering the legal services claimed by him, did any useless work through inadvertence or mistake or otherwise. Plaintiff testified that he was employed by defendant to protect his interests in the partnership controversy, and that he made the trips to Carson City, Wells, and Salt Lake City in furtherance of this employment, and to circumstances tending to show that the services rendered in connection with these trips served the interests of his client. The evidence of the defendant in respect to these trips is to the effect that they were made without authority, but in no wise tends to show that the services thus rendered were without benefit to him, or that they were unskilfully performed.

The case of Leo v. Leyser, 36 Misc. Rep. 549, 73 N. Y. Supp. 941, and Buckler v. Robinson (Ky.) 96 S. W. 1110, cited by counsel for defendant have no application. The facts are different. In the former case it appears that all services rendered the client were entirely useless on account of the inadvertence or inexperience of the attorney. And in the case of Buckler v. Robinson, the court declared that the attorney could not recover from his client because the suit he instituted was wholly unnecessary and useless to her.

The second instruction, offered by the defendant and refused by the court, reads as follows:

"The court instructs the jury that if an attorney, contrary to express instructions of his client, spends time and makes efforts to compromise the client's case, the attorney cannot recover any compensation for the time so spent or efforts so made, regardless of whether a compromise settlement is effected through the efforts of the attorney or not. An attorney at law is without any authority to compromise his client's case, unless he is specially authorized by his client."

This instruction was also indorsed by the trial judge as not pertinent. The evidence shows without conflict

that the defendant was at all times extremely anxious to settle the controversy without litigation; that he devoted his efforts to bring about the compromise that was finally effected, and sanctioned it. As soon as negotiations looking to this end were commenced in Salt Lake City between the brothers and sister and their attorneys and his counsel, he came to Salt Lake City, and he and his attorney, who had preceded him there for the purpose of attending the taking of W. T. O'Neil's deposition in the cause, participated actively in all the negotiations which led to the compromise. It nowhere appears that he expressly instructed the plaintiff to spend no time or make no effort to compromise the case.

Inasmuch as he was present, participating in the negotiations, and knew that his attorney was present and actively engaged in bringing about a desired compromise, and made no effort to deter him, the necessary implication is that he sanctioned the activities of the attorney in this regard. True, the defendant testified that he instructed the plaintiff not to go to Salt Lake City (which is denied by the plaintiff, who asserts that defendant told him he might go); but this conflicting evidence is on the point of plaintiff's authority to go to Salt Lake City to be present at the taking of Wm. T. O'Neil's deposition. The defendant's testimony in this respect does not prove or tend to prove that he expressly or impliedly directed plaintiff to take no steps to effect a compromise. We do not lose sight of the generally recognized rule, stated in the proposed instruction and affirmed by the authorities, quoted by counsel for defendant, that an attorney at law is without any authority to compromise his client's case, unless he is specially authorized by his client; but we find a lack of evidence to invoke its operation. The instruction was properly refused.

Insufficiency of the evidence to justify the verdict, and that said verdict is against law, are also specified in the assignment of errors, as well as the conditional order of the court on the motion for a new trial reducing

the amount of the verdict and judgment. Under the assignment of error relating to the insufficiency of the evidence, we deem it unnecessary to enter into an exhaustive review of the evidence, which would only unnecessarily extend this opinion. We have reviewed it carefully, and find substantial evidence to justify the verdict for plaintiff and in the amount found. We cannot therefore disturb it.

9. We come now to a consideration of the plaintiff's appeal. If this were an action for the recovery of damages for breach of contract or tort, and the proper ground of excessive damages has been interposed, the court under the findings made by it in its opinion, advancing reasons for the conditional order, would not have been justified in ordering a remission of a portion of the amount of the verdict, with the alternative of granting a new trial. A new trial may be ordered on the ground of excessive damages, only when such damages appear to have been given under the influence of passion or prejudice. Rev. Laws, 5320, subd. 5. The court, in its opinion, finds that there is nothing to indicate that the verdict was not an honest one, or that it was the result of prejudice or passion. Therefore, under the statute, the motion for a new trial would have been properly denied if this were a damage case.

"A verdict should not be disturbed on the ground of excessive damages, unless the amount is so excessive as to indicate passion or prejudice." Hayne, New Trial and Appeal (Rev. Ed.) vol. 1, p. 448.

10, 11. A verdict cannot be reduced on this ground unless a new trial is proper for the same reason. But we are persuaded that the exaction, by which plaintiff is required to remit a portion of the amount found by the jury as his compensation, or submit to a new trial, is not a matter within the discretion of the trial court in a case of this kind. The discretion which a trial court has to order a plaintiff to remit a portion of the amount of a verdict deemed excessive, as a condition for refusing a new trial, is, with one exception, limited to damage

cases by well-settled rules of practice. 20 R. C. L. 315. The exception to this rule is found in cases where by mistake or other cause the verdict is clearly excessive under the evidence, and the excess capable of being ascertained by the court without encroaching upon the province of the jury; in other words, where the excess appears as a matter of law. See Gillespie v. Jones, 47 Cal. 259; Dunning v. Crofutt, 81 Conn. 101, 70 Atl. 630, 14 Ann. Cas. 337. Defendant concedes that this is not an action. for the recovery of damages, and it is plain that the facts do not bring it within the well-defined exception to the rule by which a trial court can exercise its discretion, and reduce a verdict from the amount found by the jury, as a condition for refusing a new trial.. It is an action to recover compensation for legal services, upon an implied promise to pay the reasonable value of such services, and the issue was clearly defined by the pleadings. It was exclusively the jury's function to determine this issue under the instructions of the court in accordance with the weight of the evidence.

12. The motion for a new trial was not made, and of necessity could not have been made, upon the ground of excessive damages, but, as to this point, was made upon the ground of insufficiency of the evidence to justify the verdict. The court, by the nature of the case, as well as the ground of the motion, was confined to one of two things. It could either grant a new trial or deny it. It could not, by the conditional order made, virtually substitute its opinion as to what plaintiff's services were reasonably worth for the judgment of the jury.

It is ordered that the conditional order granting a new trial be reversed, and the verdict of the jury and the judgment, so far as they are affected by said . conditional order, restored.

### ON PETITION FOR REHEARING

*Per Curiam:*

Rehearing denied.