# REPORTS OF CASES

### DETERMINED BY

# THE SUPREME COURT

### OF THE

# STATE OF NEVADA

### OCTOBER TERM, 1920

[No. 2474]

THE STATE OF NEVADA, EX REL. P. C. FISLER, AS SECRETARY OF THE DEMOCRATIC COUNTY COMMITTEE OF NYE COUNTY, NEVADA; A. H. KEENAN, AS SECRETARY OF THE REPUBLICAN COUNTY COMMITTEE OF SAID COUNTY, AND P. C. FISLER AND A. H. KEENAN, AS ELECTORS OF SAID COUNTY, RESPONDENTS, *v.* L. E. GLASS, AS COUNTY CLERK OF SAID COUNTY, AND HARRY DUNSEATH, APPELLANTS.

[192 Pac. 472]

1. ELECTIONS—CLERK CANNOT PASS ON SUFFICIENCY OF NOMINATING CERTIFICATE REGULARLY EXECUTED.

   The county clerk has no discretion to pass on the sufficiency of a nomination certificate signed by the required number of persons and bearing the affidavit of one of the signers, as required under Stats. 1917, c. 155, sec. 31, and it is his ministerial duty to file it, though the residences of the signers are not therein stated, as is also required by statute.

2. MANDAMUS — APPELLATE COURT CANNOT DETERMINE QUESTION NOT CONSIDERED BY TRIAL COURT.

   Where the trial court only determined that it was the ministerial duty of a county clerk to reject a certificate of nomination in which the residences of the signers were not stated, the supreme court can only consider that question, and cannot determine whether the nominating petition was in law sufficient or not.

APPEAL from the Fifth Judicial District Court, Nye County; *Edward F. Lunsford,* Judge.

Proceeding in mandamus by the State of Nevada, on the relation of P. C. Fisler and another, against L. E. Glass, as County Clerk of Nye County, and Harry Dunseath. From an order requiring the County Clerk to strike from his files a purported certificate of nomination of Harry Dunseath as independent candidate for office, Dunseath appeals. **Reversed.** (COLEMAN, C. J., not participating.)

*Forman & McKnight,* for Appellant:

Every provision of the statute, except one, is admitted to have been strictly complied with, the omitted provision being that "each signer shall add to his signature his place of residence." Stats. 1917, 276; 3 Rev. Laws, 2722. Respondents contend that this provision is mandatory. To sustain their contention, it would be necessary to construe the statute strictly. This should not be done. The statute should be liberally construed. State v. Brodigan, 35 Nev. 35; State v. Harmon, 35 Nev. 189; In Re Adams, 47 N. Y. S. 543; Hallon v. Center, 103 Ky. 119; Blackburn v. Welch, 127 N. W. 991.

All parts of the same act must be considered together; and if one part, standing alone, is obscure, its meaning may be disclosed by another, and consideration of the entire act may expand or restrict the terms of a particular clause. Ex Parte Prosole, 32 Nev. 378.

The general scope and object of the primary law was clearly to enable the people to nominate for office, either by primary or by independent petitions, candidates of their choice. The right of any citizen to be a candidate for office must be jealously guarded. 9 R. C. L. 1082. This is true, whether nomination be by primary or independent petition.

Where a doubt exists as to the proper construction to be placed on a constitutional or statutory provision, courts will give weight to the construction of coordinate branches of the government and of officials whose duty it is to execute the law. The county clerk has consistently construed the provision that "each signer shall

add to his signature his place of residence" as being purely directory. State v. Glenn, 18 Nev. 34; State v. Grey, 21 Nev. 378; State v. Brodigan, 35 Nev. 35; State v. Cole, 38 Nev. 224; Porch v. Patterson, 39 Nev. 261.

*Augustus Tilden,* for Respondents:

There is no room for liberal or strict construction in this matter. Construction is the process or art of determining the sense of obscure or ambiguous terms. 12 C. J. 1301. The language of the statute is not susceptible of construction. Davenport v. Los Angeles, 80 Pac. 684. To "construe" the language used is simply to mitigate its rigor. This is a legislative function. State v. Hamilton, 33 Nev. 418. The bare fact that the legislature has spoken makes the required statement "important jurisdictional matter." Greenfield Dist. v. Hannaford Dist., 127 N. W. 499; State v. Schmahl, 156 N. W. 8.

The clerk's jurisdiction is limited to passing on the form of petition only. The reasons are manifold, and we find no holding to the contrary. State v. Blaisdell, 118 N. W. 225; Harris v. King, 109 N. W. 644; Blackburn v. Welch, 127 N. W. 991.

Every requirement going to the qualification of an elector to exercise the elective franchise, whether by voting or nominating, and every provision going to the establishment of his qualifications to vote or nominate, is necessarily mandatory. Citizenship, age, or residence cannot be dispensed with as a condition precedent to voting, nor can registration. It must follow that signing and adding the signature cannot be dispensed with as a condition precedent to nominating. All provisions are mandatory before election, directory afterwards. Jones v. State, 53 N. E. 229; Skidmore v. Hurst, 68 S. W. 841; Brodie v. Hook, 121 S. W. 979. The signer must add his place of residence in his own handwriting. Harris v. King, 109 N. W. 644.

Electors are proper parties; every provision relating to initiative and referendum is mandatory; no petition can be counted which fails to show the elector's place

of residence; the affiant who verifies the petition "by
implication must be an elector," and his affidavit must
so state; no correction or amendments can be made after
filing. Thompson v. Vaughn, 159 N. W. 65.

By the Court, SANDERS, J.:

This appeal is prosecuted from an order, judgment,
and decree, in the nature of a writ of mandate, rendered
and entered in the district court of Nye County, com-
manding L. E. Glass, as county clerk thereof, to strike
from his files a purported certificate of nomination of
Harry Dunseath as an independent candidate for the
office of district attorney of Nye County, and command-
ing him, the said Glass, as county clerk of said county,
to exclude the name of the said Harry Dunseath from
the official ballot to be used at the coming general elec-
tion to be held in the county of Nye and State of Nevada
on the 2d day of November, 1920. From this order,
Harry Dunseath appeals.

The admitted or undisputed facts, as disclosed by
the record, are as follows:

On the 20th day of August, 1920, Harry Dunseath
presented to and left with L. E. Glass, as county clerk
of Nye County, his petition, designated by the statute
a certificate of nomination as an independent candidate
for the office of district attorney of Nye County, to be
filed in said county clerk's office, and for the purpose of
having L. E. Glass, as such county clerk, as required
by law, place his name upon the official ballot to be used
in the ensuing election, to be held as aforesaid, on the
2d day of November, 1920. It appears that L. E. Glass,
as such clerk, upon satisfying himself that the certificate
of nomination contained the percentage of names as
required by law for the nomination of a candidate for
office, other than a party candidate, filed said certificate
of nomination in his office as of the 20th day of August,
1920. On the 14th day of September, 1920, it appears
that the relators made demand upon said Glass, as

county clerk, to strike the said certificate of nomination from his files, which he then and there declined and refused to do. Thereupon the relators, in the exercise of their fundamental right as qualified electors of Nye County, asked the district court thereof for an alternative writ of mandamus to issue against the respondents Glass and Dunseath to show cause, if any they had, why the said certificate of nomination should not be stricken from the files of the county clerk of Nye County, and the name of said Harry Dunseath be excluded from the official ballot, as aforesaid.

Upon a hearing of the show-cause order, it developed from the pleadings that the certificate of nomination in question contained the bona-fide signatures of at least 400 duly qualified electors of Nye County, at least two-thirds of whom were personally known by respondent Glass to be voters and registered to vote in Nye County at the coming election in November. It further appears from the answer of Dunseath that the certificate in question contained the bona-fide signatures of more than sufficient qualified electors, as required by law, to join therein, and that at least two-thirds of such bona-fide signatures represented qualified electors who actually resided in the town of Tonopah, county of Nye, State of Nevada. It is admitted by the answers of Dunseath and Glass that the signers to said certificate failed and neglected to add to their signatures their places of residence. It is admitted that there was annexed to the certificate the oath as required by law, to wit:

"One of the signers of each such certificate shall swear that the statements therein made and the signatures therein set forth are true to the best of his knowledge and belief."

We are impressed that the pleadings were so constructed as to lay before the court all the facts. The matter was submitted for its decision upon the pleadings alone, which consist of the application for the writ, the separate answers of the respondents, the reply

of Glass to the answer of Dunseath, the demurrer of Dunseath to the application, and the demurrer of relators to the separate answer of Dunseath.

The decision of the court is made a part of the record. The court decided that L. E. Glass, as such county clerk, being a ministerial officer, was without jurisdiction, power, or authority to file the certificate of nomination in question, for the reason that it did not conform to the requirements of the statute (Stats. 1917, p. 276, sec. 31) in that the required percentage of electors failed to add to their signatures their places of residence. In this connection the court's decision reads:

"It does not [meaning the statute] provide for the clerk doing anything, and for that reason I construe the statute to mean that only those petitions which conform to the statute itself may be accepted and filed by the county clerk, and among the provisions or requirements for such certificates of nominations we find a provision that the signer shall add to his signature his place of residence. I do not believe that the court is concerned with the reason for any such requirement; the legislature has seen fit to exact that condition, and I do not believe that the court can ignore such a provision."

1. If we clearly interpret the court's decision, it was of the opinion that, since the certificate of nomination did not show upon its face the places of residence of its signers, it was not such a certificate as the county clerk, a mere ministerial officer, could legally file. In this we are of the opinion that the learned judge of the court below is mistaken. The certificate contained the required number of names, to wit, at least ten per cent of the entire vote cast at the last preceding general election in Nye County. The certificate was duly executed; that is to say, one of its signers made oath that the statements made in the certificate and the signatures therein set forth are true to the best of his knowledge and belief, which said oath is annexed to the certificate. In this situation or condition, we are of the opinion that the respondent Glass, as such county clerk, was not

without jurisdiction to file the certificate; and, on the contrary, had he failed or refused to accept and file it, he would have been guilty of gross dereliction of duty as a ministerial officer.

In the recent case of Security Savings and Loan Association v. Brodigan, as Secretary of State, 44 Nev. 212, we had occasion to say that it requires no elaboration of law or of the authorities to sustain the contention that ministerial officers have no jurisdiction to pass upon the validity of instruments presented to them for filing. Ministerial officers are by the law required to receive and file such instruments as are duly executed, provided such instruments purport upon their face to be of the nature of instruments entitled to be filed or recorded, as the case may be. Such officer has the right to exercise discretion as to matters of form, but not to exercise judicial discretion.

In this instance the respondent Glass had no more right as a ministerial officer to decline to accept and file the certificate in question, because it failed to contain the places of residence of its signers, than he had the right to reject the certificate, because the signatures thereon were forged, or that the persons represented thereby were not qualified electors, or that their places of residence were false or fictitious. It would not do to say that a recorder of deeds could refuse to accept for filing a conveyance because it did not appear upon its face to be a legal instrument, or that the county clerk, as ex officio clerk of the court, could properly refuse to file a confessed judgment without legal requirements. So with a certificate of nomination. The county clerk under the statute has nothing whatsoever to do with its contents that admittedly go to the substance and validity of the certificate. The county clerk is not the guardian of the public's rights before or after election. Neither is he concerned with the grievance of any elector who complains because a certificate upon its face does not contain, in the judgment of said elector, the requirements to be stated therein by law. We do not think that

the legislature intended to vest in a mere ministerial officer such important power as to pass upon the validity of a nomination certificate before accepting and filing it.

The burden of the entire argument of relators, in which the learned district court agreed, ·is that the certificate on its face failed, as a matter of law, to contain matters of substance, and therefore was not such. an instrument as could properly be filed with the county clerk. The clerk, a ministerial officer, has nothing to do with the substance of the certificate. These are often matters of grave judicial concern. To illustrate, it is conceded that each of the requirements of the statute is intended as a safeguard against fraud in the preparation .of certificates of nomination. It is conceded that there is no fraud present, and for the purposes of the demurrer of relators to the answer of Dunseath, it is admitted that the facts as above stated are true. It becomes, therefore, an important question whether or not, the substantial purpose of the law having been subserved, the relators have shown themselves entitled to the relief demanded. The court was asked by mandamus to say whether or not the certificate in question was· such as the respondent Glass could or could not properly file. It answered the question in the negative, and there rested.

2. We are of the opinion that, the certificate being duly executed and regular in form, nothing remained for the county clerk to do but to accept and file the certificate. It follows that the trial court erred in holding that the clerk exceeded his authority in filing the certificate. The regularity of its filing being· the only question determined, we are precluded from going further, and passing upon the merits of the case, when the trial court itself declined to do so. We are an appellate, and not a trial, court.

Entertaining these views, it follows that the judgment, order, and decree appealed from must be reversed.

It is so ordered.