STATE OF NEVADA ON RELATION OF JAMES A. BRENNAN, JAMES G. RYAN, TOM WIESNER, ROBERT N. BROADBENT AND MYRON E. LEAV–ITT, MEMBERS OF THE BOARD OF COUNTY COMMISSIONERS OF CLARK COUNTY, NEVADA, PETITIONER, *v.* LORETTA BOWMAN, COUNTY CLERK OF CLARK COUNTY, STATE OF NEVADA, AND EX OFFICIO CLERK OF THE BOARD OF COUNTY COMMISSIONERS OF CLARK COUNTY, STATE OF NEVADA, RESPONDENT.

No. 7097

August 10, 1973 512 P.2d 1321

━━━━━━━

*Jones, Jones, Close, Bilbray, Kaufman & Olsen, Ltd.,* of Las Vegas, for Petitioner.

*Robert List,* Attorney General, Carson City; *Roy A. Woofter,* District Attorney, and *George F. Ogilvie, Jr.,* Chief Civil Deputy District Attorney, Clark County, for Respondent.

## OPINION

By the Court, THOMPSON, C. J.:

This original proceeding for a writ of mandamus tests the constitutionality of the County Economic Development Revenue Bond Law. Clark County proposes to issue revenue bonds

in the principal amount of $5,500,000 to assist The Flintkote Company in the acquisition and construction of pollution control facilities for its plants in Clark County. The Board of County Commissioners voted to enact Ordinance No. 396 to effectuate that purpose, but the County Clerk, acting pursuant to legal advice, has refused to publish the same. Consequently, this proceeding was commenced to compel her to do so.

The ordinance followed a memorandum of agreement between the County and Flintkote. That agreement was made and executed pursuant to the authority of the County Economic Development Revenue Bond Law, as was the ordinance which followed. Capsulized, the agreement provides that Clark County shall hold title to the pollution control facilities to be acquired and constructed at the Flintkote plants, which facilities, Flintkote, in turn, shall lease from the County and remit as lease rental payments an amount sufficient to meet all monetary requirements of the bonds to be issued by the County. Upon full payment of the bonds and other expenses connected therewith, Flintkote may exercise an option to purchase the improvements and facilities from the County for the sum of $1.

It is evident that the method of financing contemplated by the Revenue Bond Law may, in proper circumstances, materially reduce the cost of financing essential industrial improvements since the interest on the bonds issued by the political subdivision may be exempt from taxation as well as from the registration requirements of securities acts.

The Revenue Bond Law is designed to, encourage industry to locate or remain in this State in order to relieve unemployment and to secure and maintain a stable economy. NRS 244.9197. We turn to consider the challenges to that law.

1.  Public funds may not be spent for private purposes. It is asserted that the Revenue Bond Law here in issue somehow violates that doctrine. Of course, if the County were to levy a tax to retire the bonds and if the purpose of the bond issue was private rather than public in nature, the law would be struck down. Nev. Const. art. 1, § 8; State v. Churchill County, 43 Nev. 290, 185 P. 459 (1919); cf. Cauble v. Beemer, 64 Nev. 77, 82, 177 P.2d 677 (1947).

The Revenue Bond Law, however, forbids pecuniary liability of the County, or a charge against its general credit or taxing

powers. NRS 244.9201(2). Neither can it reasonably be contended that the legislative purpose is other than public. The Revenue Bond Law may be expected to encourage industry to either locate or remain in this State and, thereby, aid in relieving unemployment and maintaining a stable economy. City of Gaylord v. Beckett, 144 N.W.2d 460 (Mich. 1966). This inures to the public benefit. That Law also will work to realize the purposes of the Nevada Air Pollution Control Law, NRS 445.401 et seq., which proposes to require the use of "reasonably available methods to prevent, reduce or control air pollution." That such a purpose is a public purpose cannot be denied. Fickes v. Missoula County, 470 P.2d 287 (Mont. 1970); Nemelka v. Salt Lake County, 499 P.2d 862 (Utah 1972); Harper v. Schooler, 189 S.E.2d 284 (S.C. 1972); Knight v. West Alabama Environmental Imp. Auth., 246 So.2d 903 (Ala. 1971); Opinion of the Justices, 268 N.E.2d 149 (Mass. 1971).

2. It is asserted that the Revenue Bond Law contravenes the prohibitions of Nev. Const. art. 8, §§ 9 and 10, relative to loans of public credit. Since the Revenue Bond Law specifically forbids a charge against the County's credit or taxing powers, precludes County liability for the bonds and interest coupons, and bars County contribution towards the acquisition cost of the project, this challenge to the Law also must fail. McLaughlin v. L.V.H.A., 68 Nev. 84, 227 P.2d 206 (1951); State ex rel. Brennan v. Bowman, 88 Nev. 582, 503 P.2d 454 (1972). Inasmuch as the bonds are payable only from income to be derived from leasing the pollution control facilities, and no resort can be had against the County or its taxpayers, the County is not lending its credit in breach of the constitutional proscription. Allen v. Tooele County, 445 P.2d 994 (Utah 1968).

3. Nev. Const. art. 4, § 17, provides that "[e]ach law enacted by the Legislature shall embrace but one subject, and matter, properly connected therewith, which subject shall be briefly expressed in the title. . . ." The title of the Revenue Bond Law is said to violate that provision of our Constitution since it does not contain a reference to pollution control.

The title of the Act: "An act relating to public securities and obligations; authorizing counties and cities to issue revenue bonds to finance industrial development projects and to lease

such projects; prescribing details in connection therewith; and providing other matters properly relating thereto." As we see it, this title encompasses one subject, economic development revenue bonds. It is similar in character to the title of the Housing Authorities Law which we upheld against the same challenge in McLaughlin v. L.V.H.A., supra. This attack upon the Law is without substance.

4. Nev. Const. art. 4, § 21, proscribes local or special laws in the cases therein enumerated. The Revenue Bond Law does not offend that proscription since it is statewide in application, and is neither local nor special. State ex rel. Brennan v. Bowman, 88 Nev. 582, 503 P.2d 454 (1972). The Law is general and of uniform operation throughout the State as required by § 22 of art. 4. It may be utilized by all counties within the State without classification. Cf. Reid v. Woofter, 88 Nev. 378, 498 P.2d 361 (1972).

5. The respondent asserts that the Revenue Bond Law unlawfully delegates legislative authority in contravention of Nev. Const. art. 3, § 1. This assertion is without force. Adequate standards are specified in the Law. Its purpose [NRS 244.9197], the powers of the county NRS [244.9198], procedures for notice and hearing [NRS 244.9199], the nature and form of the bonds to be issued [NRS 244.9204], the investment of revenues [NRS 244.9205], rights upon default [NRS 244.9208], and several other matters are particularly set forth. The legislative guides are clear for the counties to follow. No. Las Vegas v. Pub. Serv. Comm'n, 83 Nev. 278, 429 P.2d 66 (1967); State ex rel. Brennan v. Bowman, supra.

The same is true with respect to the contention that the Law impermissibly allows the counties to delegate authority. McLaughlin v. L.V.H.A., supra.

6. Next, it is contended that art. 10, § 1, regarding uniform taxation, and art. 8, § 2, requiring corporate property to be taxed in the same manner as the property of an individual, are violated by the Law.

Lands and other property owned by the county are exempt from taxation, NRS 361.060, and NRS 244.9216 of the Revenue Bond Law expressly provides that property acquired by the county pursuant to that law shall remain exempt from taxation. Thus, the pollution control facilities will be owned by the county until the bonds are retired and Flintkote has

exercised its option to purchase. Notwithstanding this fact, Flintkote, by reason of the provisions of NRS 361.157 and 361.159, will be taxed for the pollution control facilities, as the lessee thereof, and to the same extent as though it was the owner. Consequently, there is no footing for the claim that a discrimination or inequality arises from the statutory scheme. Allen v. Tooele County, 445 P.2d 994, 997 (Utah 1968).

7. The remaining challenges to the Revenue Bond Law have been carefully examined and are without validity.

A peremptory writ of mandamus shall issue directing the respondent to publish Clark County Ordinance No. 396.

MOWBRAY, BATJER, and ZENOFF, JJ., concur.

GUNDERSON, J., concurring:

Assuming that a real controversy exists between the county commissioners and the county clerk—an assumption somewhat difficult to sustain—I can concur in the result of the majority opinion. However, I must note disapproval of this court larding its opinions with unnecessary constitutional dicta, discussing issues because attorneys desire it, and not because the case requires it.

I had misgivings about the excess language in State ex rel. Brennan v. Bowman, 88 Nev. 582, 503 P.2d 454 (1972). In that mandamus proceeding as in this one, it was unnecessary to decide any of the constitutional issues "raised" in the county clerk's name. Indeed, we might well have declined to entertain the proceeding at all, on the ground that it presented no actual, present controversy. Cf. Muskrat v. United States, 219 U.S. 346 (1910).[1] At most, in that proceeding as in this one, assuming a bona fide controversy between the commissioners and the clerk, we should simply have summarily ordered the clerk to perform her ministerial duty, i.e., in that case, to attest the trust instrument. Cf. State v. Glass, 44 Nev. 234, 192 P. 472 (1920). We have frequently declared we will not decide

---

[1]In *Muskrat,* the United States Supreme Court ordered certain actions dismissed for want of jurisdiction, saying:

". . . The whole purpose . . . is to determine the constitutional validity of this class of legislation, in a suit not arising between parties concerning a property right necessarily involved in the decision in question, but in a proceeding against the Government in its sovereign capacity, and concerning which the only judgment required is to settle the doubtful character of the legislation in question. Such judgment will not conclude private parties, when actual litigation brings to the court the question of the constitutionality of such legislation." Id., at 361–362.

constitutional questions, unless that is necessary to adjudicating some interested party's rights. See, for example, State v. Tax Commission, 38 Nev. 112, 145 P. 905 (1914), and authorities collected at 10 Nev. Digest, Constitutional Law, § 60.

Although the opinion issued in the first Brennan v. Bowman case discussed issues not necessary to decide it, purporting to resolve constitutional challenges to Stats. Nev. 1971, ch. 502 (NRS 242B), we at least refrained from suggesting blanket approval of that law and of the trust indenture ostensibly drawn pursuant thereto. In the instant case, if this court does not refrain altogether from advisory dicta, I suggest we should confine ourselves, as in the first Brennan v. Bowman matter, to considering whether, under some tendered theory, the state statute in question necessarily contemplates unconstitutional governmental action. Surely, we should not intimate that some county ordinance will hereafter be deemed lawful, either in form or in ultimate application. (Although the majority may not intend such sweeping approval, their opinion might be so understood.)

It will be a very dangerous practice, I think, if county commissioners can impel our advisory review of any ordinance they enact simply by having their county clerk refuse to publish it. This court lacks the time and foresight to assess, in the abstract, the constitutional implications and ramifications of every financial scheme county commissioners throughout the state may be motivated to enter by laws like that before us and that concerned in State ex rel. Brennan v. Bowman, supra. Such an undertaking is both foreign to our office and beyond our capacity. Particularly this is so because a district attorney, when he nominally represents his county clerk by tendering us constitutional arguments against an ordinance, will often be presenting a view he does not want to prevail—perhaps arguing against an ordinance he helped to prepare. If we approve such procedures, how much real advocacy can we expect from counsel?

Candidly, although the district attorney's Points and Authorities in this case are responsibly prepared from the standpoint of scholarship, they reflect little desire for victory. I believe a taxpayer or a competitor of The Flintkote Company, truly interested in defeating the plan to buy pollution equipment for Flintkote, might prefer to retain other, truly interested counsel. And, as I now perceive it, the friendly litigation now before us has been concocted to obviate the danger that, at some later date, some interested party with interested counsel might persuade us that his constitutional rights were

violated by selling bonds to purchase equipment for The Flint-
kote Company. Since that danger exists, I suggest it is our
duty to wait, and hear the interested party.