LORAINE BRECKENRIDGE AND MARIETTA STEINERT, Appellants, *v.* VIRGINIA S. ANDREWS, Individually and as Executrix of the Estate of Julius Elbridge Smith, Jr., Deceased, Respondent.

No. 6773

October 4, 1972             501 P.2d 657

*Harry F. Publow,* of Las Vegas, for Appellants.

*Lloyd v. Smith,* of Reno, and *Pillsbury, Madison & Sutro,* of San Francisco, for Respondent.

## OPINION

By the Court, MOWBRAY, J.:

This is an appeal from a judgment of the district court wherein certain property was ordered distributed to Respondent Virginia S. Andrews as the executrix of the estate of Julius Elbridge Smith, Jr. The judgment enforced the terms of the decree of final settlement and distribution of the estate of Julius Elbridge Smith (the senior), which had been previously entered by the same court. The lower court ruled that the previous decree vested an absolute and indefeasible interest in the subject property in Julius Elbridge Smith, Jr., and that the previous decree was final and binding on all concerned parties. We agree, and affirm the judgment of the district court.

1. Julius Elbridge Smith died testate on October 1, 1951.

His only survivors were Nell B. Smith, his second wife, and Julius Elbridge Smith, Jr., his only child, by his first wife. His will and four codicils were admitted to probate in the Fifth Judicial District Court, Nye County, Tonopah, Nevada, on November 6, 1951, and First National Bank of Nevada ("Bank") was appointed executor.

Smith's estate consisted of 1,000 shares of American Telephone and Telegraph Company ("AT&T") capital stock. He bequeathed 80 shares of that stock to Nell, and he also created a testamentary trust for her benefit during her lifetime or until she should remarry. The corpus of the trust consisted of 425 shares of the AT&T stock.

Paragraph 6(h) of the will provided that upon Nell's death or remarriage ". . . the trust herein created shall forthwith cease and determine, and the entire balance of the trust estate shall thereupon revert to and be and become a part of my residuary estate."

Under the terms of Paragraph 7 of his will, as amended by the third codicil, Smith left to his son "[a]ll of the rest, residue and remainder of my estate and effects whatsoever, whether real, personal or mixed, (and after payment of all costs, taxes, fees and other expenses incurred in the administration of my estate)."

And, finally, the will provided in Paragraph 8, as amended by the fourth codicil:

"If my said son, JULIUS ELBRIDGE SMITH JR., shall die before accession to his estate, and leave no issue surviving, then and in such event I give and bequeath to VIRGINIA SMITH, the wife of my said son, one-fourth (1/4th) of my said residuary estate, and to my said wife, NELL B. SMITH, three-fourths (3/4ths) of my said residuary estate; . . ."

On May 30, 1952, the Bank, as executor, filed its first and final account and report for settlement, together with its petition for distribution of Smith's estate. The district court on June 17, 1952, entered a decree wherein the executor's final settlement was approved. As to distribution of the estate, the court, in its decree, found that, "by the terms of said decedent's Will and Codicils thereto," Nell was given 80 shares of AT&T stock, and the Bank, as trustee, was given 425 shares of AT&T stock to be held in trust for the benefit of Nell "until her death or remarriage, and thereupon, in either of said contingencies, the corpus of said trust estate, and any accretions thereto, [are] to be distributed to JULIUS ELBRIDGE SMITH, JR., the surviving son and only child of said decedent." The court in 1952 expressly found that Smith had devised and bequeathed to his son "[a]ll the rest, residue and

remainder of said Estate, whether real, personal or mixed, and after first deducting all costs, taxes, fees and other expenses incurred in the administration of said Estate." The court then ordered the distribution of the estate in accordance with the foregoing findings and additionally decreed:

"7. . . .

". . .

"(h) Upon the death or remarriage of decedent's said widow, NELL B. SMITH, the trust herein created shall forthwith cease and determine, and the entire balance of the trust estate shall thereupon revert to and be and become a part of said residuary estate."

2. On November 16, 1964, Julius Elbridge Smith, Jr., died testate and without issue. He named his wife, Virginia S. Smith, as executrix and sole legatee under the will. Virginia, the respondent herein, later married Laurence Andrews. Nell Smith died on April 23, 1970. Loraine Breckenridge and Marietta Steinert, the claimants-appellants, are Nell's daughters by a previous marriage, and her sole heirs.

Virginia contends that, since Nell is deceased, the estate of Julius Elbridge Smith, Jr., is entitled to the remaining corpus of Nell's trust. Nell's daughters claim that they are entitled to three-fourths of the remaining corpus. The Bank, as trustee, petitioned the court below on May 22, 1970, for an order authorizing and directing the trustee to distribute the trust estate to the person(s) entitled thereto. The district court ruled, on June 21, 1971:

"That by a final decree of distribution, this Court distributed a vested interest in the reversion of said trust property to Julius Elbridge Smith, Jr., which decree is not ambiguous and which decree cannot be impeached by or contradicted by the terms of the will."

We agree with that ruling, and we affirm the judgment below.

3. When the court in 1952 entered the decree of distribution, it was required to name in the decree the persons entitled to receive the various portions of the estate and to specify the portion of the estate to which each was entitled.[1] The 1952

---

[1]1943 NCL § 9882.244 in relevant part (now NRS 151.110, subsection 2):

"In the decree, the court shall name the persons and the proportion or parts to which each shall be entitled, and such person shall have the right to demand and recover his or her respective share from the executor or administrator, or any other person having the same in possession."

decree of final settlement and distribution provided in Paragraph 5 that the stock be placed in an income trust for the benefit of the testator's widow, Nell Smith, "until her death or remarriage; and that thereupon, and in either of said contingencies, the corpus of said trust estate, and any accretions thereto, be distributed to JULIUS ELBRIDGE SMITH, JR., the surviving son and only child of said decedent."

That decree then ordered:

"6.—That the whole of said residuary Estate, of whatsoever kind and character, and wheresoever situate, with particular reference to and expressly including therein any balance of cash and the balance of shares of capital stock of said American Telephone and Telegraph Company remaining in the hands of said Executor (after liquidation of the aforementioned obligations, distribution of said specific bequest and the creation of said trust estate for the use and benefit of decedent's said widow), together with any and all other property of whatsoever character or description and wheresoever same may be situated, and together with any and all other property not now known or discovered, which may belong to said Estate, or in which said Estate may have any interest, claim or demand, be and the same is hereby distributed to said JULIUS ELBRIDGE SMITH, JR., the surviving son and only child of said decedent."

It is clear that the court in 1952 distributed unconditionally the remainder interest in the trust property to Julius Elbridge Smith, Jr. The decree was appealable.[2] No appeal was ever taken. As this court said in Garteiz v. Garteiz, 70 Nev. 77, 82, 254 P.2d 804, 806 (1953):

". . . When the decree of distribution became final, it was res judicata as to the rights of all persons interested in the estate in the absence of extrinsic fraud. [Citations omitted.]

"The decree of distribution is now immune from collateral attack. . . ."

In In re Estate of Callnon, 449 P.2d 186, 194 (1969), the California Supreme Court ruled:

". . . [A] decree of distribution is the judicial construction of the decedent's will. If the decree erroneously construes the will, it must be attacked on appeal. Where no appeal is taken the decree stands as the final and conclusive interpretation of

---

[2]1931 NCL § 9882.293 in relevant part (now NRS 155.190, subsection 12):

"An appeal may be taken to the supreme court from an order or decree . . . distributing property; . . ."

the testator's intent and is binding on all interested parties. Resort may not be had to the will thereafter unless the provisions of the decree are ambiguous. Where, as in the instant case, the decree was not challenged on appeal and is not ambiguous, we must insist that it remain unassailable against any attempt to attack it collaterally. In this way, we preserve the finality and conclusiveness of such decree and guaranty the integrity and stability of titles to property."

It is also the rule that, once a decree of distribution becomes final, the adjudication is conclusive as regards the terms of the trust and the interests created thereby. As the court decreed in In re Estate of Callnon, *supra,* 449 P.2d at 190:

" 'The administration of a decedent's estate involves a series of separate proceedings, each of which is intended to be final . . .' [Estate of Loring, 175 P.2d 524, 527 (Cal. 1946).] . . . A decree of distribution is a judicial construction of the will arrived at by the court ascertaining the interest of the testator. [Citations omitted.] Once final, the decree supersedes the will [citations omitted] and becomes the conclusive determination of the validity, meaning and effect of the will, the trusts created therein and the rights of all parties thereunder. [Citations omitted.]"

4.   Appellants claim that the lower court erred in not finding an ambiguity in the decree of distribution, in that Paragraph 6 of the decree, *supra,* excluded the remainder interest in the trust from the residuary estate that passed to the testator's son. They also contend that an inconsistency exists between Paragraphs 5 and 7(h), *supra.*

Paragraph 6 of the decree provided that "the whole of said residuary Estate, of whatsoever kind and character," was distributed to the testator's son, except (1) those shares of stock liquidated to pay debts; (2) the bequest of 80 shares of stock to the testator's widow, Nell Smith; and (3) the "trust estate for the use and benefit of decedent's said widow." That paragraph excluded only Nell's life estate in the property; the remainder interest was included in the residuary estate distributed to the testator's son.

Paragraph 5 of the decree provided that the corpus of the trust would go to the testator's son upon Nell's death or remarriage; Paragraph 7(h) provided that, upon Nell's death or remarriage, "the entire balance of the trust estate shall thereupon revert to and be and become a part of said residuary

estate," thus eliminating the necessity of reopening the testator's estate. The effect of Paragraph 7(h) was to make the corpus of the trust available for distribution to the person in whom title to the residuary estate had vested.

We find no ambiguity in the decree of settlement.

5. As did District Judge Mann, we too have examined Julius Elbridge Smith's will, and we have concluded that the decree of settlement expressed the intent of the testator. The only natural objects of the testator's bounty were Nell, his wife; and Julius, Jr., his only child. The testator provided for Nell by making her the beneficiary of a lifetime trust, which trust expressly terminated upon her death or remarriage; Julius, Jr., was named the beneficiary of the residuary estate. The appellants would have us believe that Julius, Jr.'s interest in the remainder of the trust never vested because he died before Nell. We believe, as did the lower court, that the testator intended that Julius needed only to survive the testator in order to "accede" to a vested interest in the remainder of the trust. Otherwise, Nell would receive a greater interest in the testator's estate upon her death (three-fourths of the corpus of the trust) than she would have received while living. We do not believe that such was the testator's intent.

6. Finally, appellants urge that Nell was not represented by counsel during the 1952 probate proceedings and that District Judge Hatton (who presided in the original probate proceedings) should have appointed counsel to represent her, in accordance with the provisions of 1931 NCL § 9882.16 then in effect.[3] District Judge Mann rejected appellants' contention and noted that the petition for letters testamentary stated that Nell was a resident of Tonopah, Nevada, as well as Burbank, California. Appellants have stipulated that, until her death on April 23, 1970, Nell received notice of all proceedings, as

---

[3] 1931 NCL § 9882.16:

"Whenever a will is offered for probate and it appears there are minors, or if it appears there are other persons interested in the estate but who reside out of the county and are unrepresented, the court shall, whether there is a contest or not, appoint an attorney for such minors or other persons." (This section was amended in 1961 by changing the word "shall" to "may," and with that single change is now NRS 136.200, subsection 1.)

required by NRS 155.010. Under the statute then existing, it was not mandatory that Judge Hatton appoint counsel for Nell.

The judgment of the lower court is affirmed.

ZENOFF, C. J., and BATJER and THOMPSON, JJ., concur.

GUNDERSON, J., concurring:

To affirm the lower court's judgment, we need notice only that Julius, Jr., acceded to a vested interest.