NOAH LEVINGSTON, INDIVIDUALLY AND AS ADMINISTRATOR OF THE ESTATE OF DANIEL W. LEVINGSTON, APPELLANT, v. WASHOE COUNTY, NEVADA, BY AND THROUGH THE SHERIFF OF WASHOE COUNTY, RESPONDENT.

No. 26265

April 30, 1996                                    916 P.2d 163

*Lynn G. Pierce,* Reno, for Appellant.

*Richard A. Gammick,* District Attorney, *Margaret Crowley,* Deputy, Washoe County, for Respondent.

---

## OPINION

*Per Curiam:*

### FACTS

Daniel Levingston ("Daniel"), the owner of a home at 1361 East 10th Street ("the 10th Street home") in Reno, died intestate in June 1991. In August 1991, appellant Noah Levingston ("Noah") was appointed administrator of Daniel's estate. Daniel left four heirs—Noah, Lula Levingston ("Lula"), Rita Dennis ("Rita"), and David Levingston ("David"). On April 28, 1993, the probate court ordered that the 10th Street home be distributed among Lula, Rita and David. The probate court also awarded Noah a $5,751.10 administrator's lien against the 10th Street home. On June 20, 1994, the probate court reaffirmed its April 1993 order, ruling that the order was final and not subject to alteration.

After Daniel's death, the 10th Street home reportedly became a "crack" house. At the trial below, respondent Washoe County ("Washoe") presented evidence that extensive drug activity occurred at the 10th Street home between May 1992 and May 1993. Part of the evidence included Rita's arrest at the 10th Street home for being under the influence of cocaine. On October 1, 1992, Rita pleaded guilty to possession of a controlled substance. Rita also admitted that drugs were being sold at the 10th Street home. David was arrested at the 10th Street home and later pleaded guilty to possession of a controlled substance for the purpose of sale. During Rita's and David's arrests, police searched the 10th Street home and found drugs and paraphernalia that indicated cocaine was being sold on the premises.

On June 21, 1993, Washoe seized the 10th Street home based on the illegal drug activity. Washoe did not formally notice the owners of the 10th Street home, or provide a hearing, before the seizure. Washoe filed a civil forfeiture complaint against the 10th Street home on June 22, 1993. Noah, as administrator of Daniel's

estate, answered the complaint. A bench trial was conducted in May 1994.

On August 17, 1994, the district court issued an order granting Washoe the requested forfeiture of the 10th Street home. In this appeal, Noah challenges the district court's order by contending that Nevada's civil forfeiture statutes violate the Due Process, Double Jeopardy, and Excessive Fines Clauses of the United States Constitution. For the reasons stated below, we conclude that the application of Nevada's forfeiture statutes in this case was unconstitutional.

## DISCUSSION

### Ownership of the 10th Street home

Noah and the heirs of Daniel's estate did not properly appeal the April 1993 probate court distribution when that distribution was made. *See* Breckenridge v. Andrews, 88 Nev. 520, 524-25, 501 P.2d 657, 660 (1972). Even so, Noah and the beneficiaries of Daniel's estate had the opportunity to challenge the April 1993 distribution when the probate court reconsidered that order in June 1994. After reviewing Noah's contentions in this appeal, we conclude that Noah did not present sufficient evidence to challenge the propriety of the probate court's April 1993 order. Accordingly, we conclude that when Washoe filed the present forfeiture action, Lula, Rita and David were the owners of the 10th Street home and Noah had an administrator's lien against the 10th Street home.[1]

### Consideration of the constitutional issue

Washoe argues that this court should not consider the constitutional issues raised in this appeal because they were not raised before the district court. However, in McCullough v. State, 99 Nev. 72, 74, 657 P.2d 1157, 1158 (1983), we ruled that issues of a constitutional nature may be addressed when raised for the first time on appeal. This opportunity is necessary because "the privilege of bringing every law to the test of the constitution belongs to the humblest citizen, who owes no obedience to any legislative act, which transcends the constitutional limits." Justice Joseph Story, Address to the Suffolk Bar (Sept. 4, 1821), *in The Miscellaneous Writings of Joseph Story* 428 (James Monroe

---

[1]Based on the record from the forfeiture proceedings and the briefs filed for this appeal, it is clear that Noah is representing the interests of Lula, Rita and David. Accordingly, this opinion will address the interests of Lula, Rita and David in the 10th Street home.

and Company, eds., 1835). In this opinion, we will review whether NRS 179.1165 and NRS 453.305 are constitutionally valid as applied in this case.

Pursuant to NRS 179.1165(c), the government may seize property that is subject to forfeiture without notice if probable cause exists that the property is a danger to public health and safety.[2] Based on NRS 453.301(8), real property is subject to forfeiture if an owner or tenant uses the real property to facilitate a violation of the NRS provisions relating to the possession, sale, and trafficking in controlled substances.[3]

## Requirements of due process

On December 13, 1993, the United States Supreme Court addressed the constitutional parameters of civil forfeiture laws in United States v. James Daniel Good Real Property, 510 U.S. 43, 114 S. Ct. 492 (1993). Although *Good Real Property* was filed after Washoe's complaint, it was decided before Washoe's complaint was ruled upon. Accordingly, the holding in *Good*

---

[2]NRS 179.1165 states the following:

**179.1165 Seizure of property: Requirement of process.**

1.   Except as provided in subsection 2, property that is subject to forfeiture may only be seized by a law enforcement agency upon process issued by a magistrate having jurisdiction over the property.

2.   A seizure of property may be made by a law enforcement agency without process if:

(a) The seizure is incident to:

   (1) An arrest;

   (2) A search pursuant to a search warrant; or

   (3) An inspection pursuant to a warrant for an administrative inspection;

(b) The property is the subject of a final judgment in a proceeding for forfeiture;

(c) The law enforcement agency has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or

(d) The law enforcement agency has probable cause to believe that the property is subject to forfeiture.

[3]NRS 453.301 provides, in pertinent part, as follows:

**453.301 Property subject to forfeiture.**   The following are subject to forfeiture pursuant to NRS 179.1156 to 179.119, inclusive:

. . . .

8.   All real property and mobile homes used or intended to be used by any owner or tenant of the property or mobile home to facilitate a violation of the provisions of NRS 453.011 to 453.552, inclusive, except NRS 453.336, or used or intended to be used to facilitate a violation of a law of any other jurisdiction which prohibits the same or similar conduct as prohibited in NRS 453.011 to 453.552, inclusive, except NRS 453.336. . . .

*Real Property* governed Washoe's forfeiture action. *See* Griffith v. Kentucky, 479 U.S. 314, 328 (1987) (a new rule for the conduct of criminal prosecutions is applied retroactively in pending state cases).[4]

## 1. *Seizure of the 10th Street home*

Due process affords an individual notice and an opportunity to be heard before the government can deprive him of property. *Good Real Property,* 510 U.S. at 48, 114 S. Ct. at 498. Mere proof of drug transactions is not in itself an exigent circumstance that justifies the postponement of notice and a hearing. *Id.* at 62, 114 S. Ct. at 505. "[T]he Government must show that less restrictive measures [other than seizure]—*i.e.,* a *lis pendens,* restraining order, or bond—would not suffice to protect the Government's interests." *Id.*

A review of whether NRS 179.1165(c) violates the Due Process Clause requires an inquiry into the interest affected by the seizure of real property, the risk of erroneous seizure, and the government's interest in seizing real property without a hearing. *See* Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

### a. *Interest affected by seizure of real property*

The seizure of real property affects the fundamental interest of our citizenry in maintaining control over their residence and remaining free from government interference. Fuentes v. Shevin, 407 U.S. 67, 80-81 (1972). The purpose of due process is to protect that fundamental right from arbitrary encroachments by minimizing unfair or mistaken deprivations of property. *Id.*

### b. *Risk of erroneous seizure*

The practice of ex parte seizures presents an unacceptable risk of unfair or mistaken deprivations of property. *Good Real Property,* 510 U.S. at 55, 114 S. Ct. at 501. Pursuant to NRS 179.1165, the government may seize property without presenting any evidence of defenses the owner may have. The owner's first opportunity to challenge the State's action in an adversarial

---

[4]We consider the constitutional protections afforded a defendant in a civil forfeiture proceeding to be as fundamental as the constitutional protections afforded a defendant in a criminal prosecution. Therefore, the same rationale that mandates the retroactive application of a new rule governing criminal prosecutions mandates the retroactive application of a new rule governing civil forfeitures.

proceeding may be months or even years after the initial seizure of property. In the instant case, the owners of the 10th Street home waited almost fourteen months for a district court ruling. In the event a district court refuses to grant a requested forfeiture after months of property deprivation, that determination does not cure the temporary deprivation of property that could have been prevented by an earlier hearing. Connecticut v. Doehr, 501 U.S. 1, 15 (1991).

When such interests are at stake, "[n]o better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it." Anti-Fascist Comm. v. McGrath, 341 U.S. 123, 171-72 (1951) (Frankfurter, J. concurring) (footnotes omitted). "The right to a fair and open hearing is one of the rudiments of fair play assured to every litigant by the Federal Constitution as a minimal requirement." Railroad Comm'n. of Cal. v. Pacific Gas Co., 302 U.S. 388, 393 (1938).

### c.  The government's interest

The government's interest in seizing real property before a forfeiture hearing rests in the need to ensure the subject property is not sold, destroyed, or used for illegal activity before forfeiture can become final. *Good Real Property,* 510 U.S. at 58, 114 S. Ct. at 503. When property may be easily transferred or hidden, frustrating the government's interest, a special need for prompt action justifies postponement of notice and a hearing. Calero-Toledo v. Pearson Yacht Leasing Co., 416 U.S. 663, 678 (1974). The government's special need for prompt action is less apparent when real property is subject to forfeiture. The government may prevent the sale of real property by filing a notice of lis pendens or by obtaining an ex parte restraining order. Also, continued illegal activity can be countered by search and arrest warrants. With these means at the government's disposal, seizure of real property without notice or a hearing can only occur in the most exigent of circumstances.

We conclude that exigent circumstances were not present in the case at bar. In this case, Washoe argued that illegal drug activity was occurring at the 10th Street home and that the drug activity was a threat to neighborhood safety. However, we conclude that Washoe failed to show that the threat to neighborhood safety justified the seizure of real property without notice or a hearing. Accordingly, we conclude that Washoe's seizure of the 10th Street home pursuant to NRS 179.1165(c) violated the Due Process Clause of the United States Constitution. *See Mathews,* 424 U.S. at 335.

## 2. *Forfeiture of the 10th Street home*

The illegal seizure of property, standing alone, does not immunize property from forfeiture if improperly obtained evidence is not used in the forfeiture proceeding. United States v. Property at 4492 S. Livonia Rd., Livonia, 889 F.2d 1258, 1265 (2d Cir. 1989); United States v. One (1) 1971 Harley-Davidson Motorcycle, 508 F.2d 351, 351-52 (9th Cir. 1974). Accordingly, the forfeiture order issued by the district court is not invalid despite the illegal seizure of the 10th Street home if the evidence introduced at the forfeiture proceeding was derived independently from the illegal seizure. *See* John Bacall Imports, Ltd. v. United States, 412 F.2d 586 (9th Cir. 1969).

During the forfeiture proceeding, Washoe had to prove that an owner or tenant of the 10th Street home used the 10th Street home to facilitate a violation of Nevada's controlled substances laws. NRS 453.301(8). Washoe presented evidence that David and Rita were convicted of drug related offenses at the 10th Street home. Washoe also presented evidence of other drug activities at the 10th Street home. Therefore, Washoe proved the requirements for forfeiture of the 10th Street home without using evidence tainted by the illegal seizure of the 10th Street home.

We conclude that despite Washoe's illegal seizure of the 10th Street home, the forfeiture of the 10th Street home was not tainted by that illegal seizure because the forfeiture was proven without the use of evidence gained through the illegal seizure.

### *Protections against double jeopardy*

The longstanding protection flowing from the Double Jeopardy Clause is that "no man shall be twice vexed for one and the same offense." Ex parte Lange, 85 U.S. 163, 168 (1873). In applying double jeopardy scrutiny to Nevada's civil forfeiture statutes, we must address three questions: (1) whether a civil forfeiture action constitutes punishment, (2) whether forfeiture in this case was based upon acts previously punished criminally, and (3) whether the civil forfeiture action and the criminal prosecution were separate proceedings. *See* United States v. $405,089.23 U.S. Currency, 33 F.3d 1210, 1216 (9th Cir. 1994).

"[T]he determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve." United States v. Halper, 490 U.S. 435, 448 (1989).

In Austin v. United States, 509 U.S. 602, 113 S. Ct. 2801

(1993), the Court considered whether in rem civil forfeitures constitute punishment in the context of the Excessive Fines Clause. In concluding that the federal forfeiture statute constitutes punishment, the *Austin* Court indicated that Congress' intent was to apply the statute only against culpable individuals. *Id.* The *Austin* Court also referred to a United States Senate report on the federal forfeiture statute stating the conventional criminal sanctions were inadequate to deter and punish unlawful drug activities. *Id.* at 620, 113 S. Ct. at 2811. Based upon these observations, the *Austin* Court concluded that the federal forfeiture statutes "look more like punishment, not less." *Id.* at 619.[5]

As with the statute reviewed in *Austin,* Nevada's forfeiture statute looks more like punishment. The innocent owner defense is recognized in forfeiture actions. Property is not subject to forfeiture if the illegal act giving rise to the forfeiture was committed without the knowledge, consent or wilful blindness of the owner. NRS 179.1164(2). Also, NRS chapter 179 ties forfeiture actions directly to illegal drug activity.

This court has previously acknowledged that Nevada's civil forfeiture statutes have an ancillary punitive effect. City of Sparks v. Nason, 107 Nev. 202, 204, 807 P.2d 1389, 1390 (1991). Further, we concluded in Desimone v. State, 111 Nev. 1221, 904 P.2d 1 (1995), that taxes and civil penalties imposed pursuant to NRS chapter 372A constitute punishment.

With respect to whether Washoe's forfeiture proceeding was based on acts that were previously punished criminally, we conclude they were. David and Rita were convicted of drug related offenses and served sentences pursuant to those convictions. While Washoe presented evidence of other arrests and drug activities at the 10th Street home, we conclude that the evidence of David's and Rita's previous convictions were important to Washoe's allegation regarding drug activity.

To impose punishment for the same conduct in a criminal and civil action, the actions must occur in a single proceeding.[6]

---

[5]The reasoning that *Austin* applied in the excessive fines context is equally applicable in double jeopardy analysis. *See $405,089.23 U.S. Currency,* 33 F.3d at 1219.

[6]The federal circuit courts differ on what constitutes a single proceeding. The United States Court of Appeals for the Ninth Circuit ruled that a forfeiture case and criminal case constitute the same proceeding if they are brought in the same indictment and tried in the same trial. *$405,089.23 U.S. Currency,* 33 F.3d at 1216. The United States Court of Appeals for the Second and Eleventh Circuits adopted a less rigid rule. According to those courts, civil and criminal actions may be filed and docketed separately, but must be pursued simultaneously, as part of a "single, coordinated prosecu-

*Halper,* 490 U.S. at 450. Otherwise, only the first action brought will stand while the second action brought will fall under the weight of double jeopardy scrutiny. *Desimone,* 111 Nev. at 1230, 904 P.2d at 7. Washoe's civil forfeiture action was clearly a separate legal proceeding that subjected David and Rita to additional punishment for the same unlawful activity.

Based on the reasoning presented above, we conclude that the civil forfeiture proceeding under review in the case at bar subjected Rita and David to double jeopardy. Accordingly, to the extent the district court's forfeiture order deprived Rita and David of their ownership interest in the 10th Street home, that order is reversed.

## *Protection against excessive fines*

The Excessive Fines Clause applies to in rem civil forfeiture proceedings. *Austin,* 509 U.S. at 604, 113 S. Ct. at 2803. A civil forfeiture of property used or intended to be used for drug activity is payment to the sovereign for some offense and, therefore, is subject to the Excessive Fines Clause even if the forfeiture also serves some remedial purpose. *Id.* at 622, 113 S. Ct. at 2812. While we conclude that excessive fines analysis applies to civil forfeiture actions, insufficient evidence was presented to the district court to determine whether Washoe's forfeiture of the 10th Street home violated the Excessive Fines Clause. Accordingly, we direct the district court to consider on remand whether the forfeiture action in this case imposed an excessive fine upon Lula. *See id.* As part of its inquiry, the district court should consider whether Noah's lien upon the 10th Street home was a property interest subject to forfeiture and, if it was, whether the forfeiture of that lien was an excessive fine.

## CONCLUSION

We conclude that Washoe's seizure of the 10th Street home pursuant to NRS 179.1165(c) violated the Due Process Clause because it occurred without a pre-seizure notice or hearing. Notwithstanding Washoe's illegal seizure of the 10th Street home, however, we conclude that the forfeiture of the 10th Street home was not tainted by evidence from an illegal seizure.

With respect to whether the civil forfeiture proceedings in this case punished Rita and David for acts that were previously the

tion." United States v. One Single Family Residence, 13 F.3d 1493, 1499 (11th Cir. 1994); United States v. Millan, 2 F.3d 17, 20 (2nd Cir. 1993). Because Washoe's civil forfeiture proceeding failed both tests, this opinion does not address what procedures constitute a single proceeding.

basis of criminal punishment, we conclude that they did. As such, the forfeiture of the 10th Street home was not invalid because of the lack of a preseizure notice or hearing; it was unconstitutional because it subjected David and Rita to double jeopardy. "[A]n unconstitutional Act . . . is, in legal contemplation, as inoperative as though it had never been passed." Norton v. Shelby County, 118 U.S. 425, 442 (1886). Accordingly, to the extent the forfeiture order in this case deprived Rita and David of their interest in the 10th Street home, we reverse the district court's order.

With respect to Lula's and Noah's interest in the 10th Street home, we remand this case to the district court to determine whether Lula and Noah were aware of criminal activity on the premises and, if so, whether the present forfeiture order imposed an excessive fine on Lula or Noah.