IN THE MATTER OF THE CHALLENGE TO THE CANDIDACY OF
AMBER LYNN CANDELARIA.

AMBER LYNN CANDELARIA, APPELLANT, v. DAVID ROGER, RESPONDENT, AND COLBY DAWSON BECK; CONRAD HAFEN; AND BERNARD BROWNISLAW ZADROWSKI, REAL PARTIES IN INTEREST.

No. 55714

October 14, 2010                                    245 P.3d 518

---

*Lewis & Roca LLP* and *Daniel F. Polsenberg* and *Jennifer B. Anderson*, Las Vegas, for Appellant.

*David Roger*, District Attorney, and *Mary-Anne Miller*, Deputy District Attorney, Clark County, for Respondent.

*Conrad Hafen*, Las Vegas, in Proper Person.

*Colby D. Beck*, Las Vegas, in Proper Person.

*Bernard B. Zadrowski*, Las Vegas, in Proper Person.

# OPINION

By the Court, PARRAGUIRRE, C.J.:

In this appeal, we are asked to define the eligibility requirements set forth in NRS 4.010(2)(a) for justice of the peace. Based on the statute's plain and unambiguous language, we conclude that, before being elected or appointed to a justice of the peace position, an attorney must be licensed to practice law for a minimum of five calendar years, which are typically 365-day years, from the date of his or her admission. After expedited briefing and argument, we summarily affirmed the district court's order granting the petition to remove the candidate for justice of the peace from the ballot, as she did not meet the minimum five-year requirement. This opinion sets forth the full reasoning that underlies our disposition.

## BACKGROUND

Appellant Amber Lynn Candelaria graduated from the University of Nevada, Las Vegas, Boyd School of Law, in 2006. After successfully passing the Nevada State Bar exam that same year, she was licensed and admitted to practice law for the first time when she was admitted to the Nevada State Bar on October 17, 2006.

In November 2009, the State Bar sent Candelaria her 2010 bar membership fees statement, which assessed her fees at the rate applicable to active attorneys admitted to practice in any jurisdiction for five or more years. After receiving this statement, in January 2010, Candelaria filed a declaration as a candidate for election to the office of justice of the peace in Department 14 of Las Vegas Township. The election for this office was scheduled to be held on November 2, 2010.

Shortly after Candelaria filed her candidacy declaration, respondent Clark County District Attorney David Roger received a

request to challenge Candelaria's eligibility to run for the office from real party in interest Bernard Brownislaw Zadrowski, who has also declared his candidacy for this position. As authorized by statute, Roger filed a petition in the district court challenging Candelaria's eligibility. In resolving the petition, the district court determined that Candelaria did not meet NRS 4.010(2)(a)'s requirement that she have been "licensed and admitted to practice law in the courts of this State, another state or the District of Columbia for not less than 5 years at any time preceding . . . her election or appointment." The district court further rejected Candelaria's constitutional challenges to NRS 4.010(2)(a). As a result, the district court entered an order granting the petition to remove Candelaria from the ballot as a candidate for justice of the peace. This appeal followed.

## DISCUSSION

This court presumes statutes to be valid, and to demonstrate that a statute is unconstitutional, the challenger must clearly show the statute's invalidity. *Halverson v. Secretary of State*, 124 Nev. 484, 487-88, 186 P.3d 893, 896 (2008). Questions of statutory construction are reviewed de novo. *Leven v. Frey*, 123 Nev. 399, 402, 168 P.3d 712, 714 (2007). If a statute's language is clear and the meaning plain, this court will enforce the statute as written. *We the People Nevada v. Secretary of State*, 124 Nev. 874, 881, 192 P.3d 1166, 1170-71 (2008). Statutory language is ambiguous if it is capable of more than one reasonable interpretation. *Id.* at 881, 192 P.3d at 1171; *Leven*, 123 Nev. at 404, 168 P.3d at 716. Under this framework, we first interpret NRS 4.010(2)(a)'s meaning, before addressing the constitutional issues presented.

### Statutory interpretation

Nevada's Constitution gives the Legislature the power to determine the number of justices of the peace to be elected in each city and township in the state and to "fix by law their qualifications" for holding the office. Nev. Const. art. 6, § 8. To that end, the Legislature has enacted NRS 4.010, which prescribes the qualifications for service as a justice of the peace. Under NRS 4.010(2)(a), in counties with populations of 400,000 or more, a justice of the peace in a township with a population of 100,000 or more must be

> an attorney who is licensed and admitted to practice law in the courts of this State at the time of his or her election or appointment and has been licensed and admitted to practice law

in the courts of this State, another state or the District of Columbia for not less than 5 years at any time preceding his or her election or appointment.

Candelaria contends that the term "years" is ambiguous because the statute does not define it and this court's precedent has found the term to be ambiguous. We disagree.

### NRS 4.010(2)(a)'s five-year admission and licensure requirement is plain and unambiguous

In support of her ambiguity argument, Candelaria points to this court's decision in *SNEA v. Lau*, 110 Nev. 715, 877 P.2d 531 (1994). In *SNEA*, this court addressed a challenge to former governor Bob Miller's eligibility to run for a second full term under Article 5, Section 3 of the Nevada Constitution, which prohibits an individual acting as governor for "more than two years" from being elected as governor more than once. 110 Nev. at 716-17, 877 P.2d at 532-33. Miller had served one full term and a partial term after taking over for Richard Bryan, who was elected to the United States Senate during his term as governor. *Id.* at 717, 877 P.2d at 532-33. The determinative issue in that case was this court's interpretation of the meaning of the term "years" as used in the phrase "more than two years" in Article 5, Section 3. *Id.* at 716-17, 877 P.2d at 532-33.

In addressing this issue, the court rejected the petitioners' argument that the term "years" clearly and unambiguously meant a 365-day calendar year. *Id.* at 717, 877 P.2d at 533. The court began its analysis by noting that many words in the English language can have two or more meanings. *Id.* The court then concluded that the use of the word "years" in Nevada's statutes and Constitution was an example of this phenomenon, and the court observed that the word may mean a calendar-based year, which is calculated from and to a set date, or an official or political year, which runs from and to a floating day within a month.[2] *Id.* at 718, 877 P.2d at 533. Ultimately, the court concluded that the term "years," as used in Article 5, Section 3, should be interpreted as official years. *Id.* at 719, 877 P.2d at 534.

Candelaria relies on *SNEA* to support her contention that there is no language in NRS 4.010(2)(a) that clearly indicates that five calendar, and typically 365-day years, must have elapsed between the date of licensure and the date of the election, or that otherwise articulates a specific period during which a candidate for justice of the peace must have been licensed and admitted to practice law to

---

[2]An example of a political or official year is one that begins and ends on a Monday and can therefore vary between 52 weeks or 53 weeks. *SNEA*, 110 Nev. at 718, 877 P.2d at 533-34.

be eligible to run for that position. Candelaria asserts that NRS 4.010(2)(a) does not require her to have been licensed or admitted for a particular period of time, but merely requires that she have been licensed and admitted a certain number of "calendar years."[3]

Candelaria's arguments are problematic for a number of reasons. As an initial matter, the language of the statute at issue here is significantly different and far more specific than the constitutional provision at issue in *SNEA*. The language of Article 5, Section 3 provides no guidance on what is meant by "years" as used in the phrase "two years of a term." In contrast, NRS 4.010(2)(a) requires a candidate for justice of the peace to have been "licensed and admitted to practice law . . . for not less than 5 years at any time preceding his or her election or appointment." As Zadrowski points out, the "not less than 5 years" language anticipates that the attorney will have been licensed and admitted for an exact period of time equal to not less than five years. Moreover, he correctly notes that the statute provides a specified date by which this five-year period must have concluded—before the attorney's election or appointment to the position. Because the statute provides a specific end date, it most logically follows that there is also a specified beginning date—the date an attorney first becomes licensed.

As pointed out in *SNEA*, many words, viewed in isolation, can have multiple meanings. 110 Nev. at 717, 877 P.2d at 533. By focusing exclusively on the term "years," Candelaria overlooks other key phrasings in NRS 4.010(2)(a). The statute modifies the term "years" with "*for not less than* 5 years *at any time preceding* his or her election or appointment." NRS 4.010(2)(a) (emphases added). Unlike the usage of the term "years" in *SNEA*, the usage of that term in NRS 4.010(2)(a) is not susceptible to more than one reasonable interpretation. Here, the statute's language anticipates a definite period (not less than five years) and sets a definite beginning date (the date of admission and licensure) and a date by which the period must be completed (prior to the attorney's election or appointment to the position of justice of the peace). Thus, the period of not less than five years must begin and end before the attorney's election or appointment to the position, a conclusion that requires the use of a calendar-year approach. *See SNEA*, 110 Nev. at 718, 877 P.2d at 533 (defining a calendar-based year to mean a year calculated from and to a set date). It therefore fol-

---

[3]To reach the required five years using the approach Candelaria advocates, 2006 must be counted as a full year of licensure and admission, even though Candelaria was only admitted in October of that year, and therefore was licensed for only three months in 2006. Under this scenario, 2006 actually is added to 2007, 2008, and 2009 to reach four years. Finally, this year—2010—would likewise have to be treated as a full year of licensure and admission, even though the election is scheduled for November of this year.

lows that NRS 4.010(2)(a), by its plain language, requires an attorney to have been licensed for a minimum of five calendar years, which are typically 365-day years, from the date of his or her admission before being elected or appointed to the justice of the peace position.

In light of NRS 4.010(2)(a)'s plain and unambiguous language, Candelaria was required to have been licensed and admitted for five calendar years by the November 2010 election. Candelaria was licensed and admitted to practice law for the first time when she was admitted to the Nevada State Bar on October 17, 2006. As a result, at most, she will have been licensed and admitted for four years by the time of the November 2010 election. Thus, she is ineligible to serve as a justice of the peace in Las Vegas Township based on her failure to meet the minimum statutory requirement.[4] Accordingly, to the extent Candelaria raises statutory construction challenges, we affirm the district court's order granting the petition to remove Candelaria from the ballot as a justice of the peace candidate. We now turn to Candelaria's constitutional arguments.

*Constitutional challenges to NRS 4.010(2)(a)*

Candelaria challenges the constitutionality of NRS 4.010(2)(a) on two grounds: (1) that it interferes with the electorate's right to vote for the candidate of its choice and her right to run for public office, and (2) that it violates equal protection.[5]

---

[4]In an apparent effort to avoid the application of NRS 4.010(2)(a)'s plain language, Candelaria attempts to create an ambiguity argument by relying on Supreme Court Rule 98, which addresses issues related to bar membership, including setting the amount of membership fees. Candelaria argues that because the State Bar has concluded that she has been "admitted to practice . . . 5 years or more," for the purpose of calculating her membership fees under SCR 98(9), NRS 4.010(2)(a) is ambiguous and susceptible to more than one reasonable interpretation with regard to when an attorney can be said to have satisfied the "licensed and admitted to practice . . . for not less than 5 years" requirement set forth in that statute. But neither SCR 98 nor the State Bar's determination regarding Candelaria's status for the purpose of calculating her membership fee responsibilities are in any way relevant to determining the meaning of NRS 4.010(2)(a)'s five-year requirement. As a result, we reject as without merit Candelaria's efforts to create ambiguity where none exists with regard to NRS 4.010(2)(a)'s five-year requirement.

[5]Candelaria also argues that NRS 4.010(2)(a) violates her due process rights and was enacted in violation of both separation of powers and Article 4, Section 17 of the Nevada Constitution's single-subject rule. These arguments were not made in district court or developed with sufficient authority on appeal, and consequently, we will not substantively address them in this opinion. *Cf. Levingston v. Washoe Co.*, 112 Nev. 479, 482-83, 916 P.2d 163, 166 (1996) (recognizing that it is within this court's authority to address constitutional issues raised for the first time on appeal); *see Edwards v. Emperor's Garden Rest.*, 122 Nev. 317, 330 n.38, 130 P.3d 1280, 1288 n.38 (2006) (noting that this court need not consider an issue not cogently argued or supported by salient authority).

Before discussing these constitutional issues, we address a procedural irregularity that is presented in this·appeal. Specifically, Candelaria has failed to comply with NRAP 44. Under NRAP 44, when a party challenges the constitutionality of a legislative act in a proceeding before this court and in which the state is not a party, the party asserting the challenge must give written notice to the clerk of this court, so that the clerk can certify the fact to the attorney general. Here, Candelaria did not provide the clerk with written notice of the constitutional challenge. Although counsel for Candelaria, upon questioning, stated during oral argument that such notice was provided to the court, our review of the documents submitted to this court reveals that no such notice was provided. This failure is an independent basis upon which to summarily reject her constitutional arguments. But because these issues concern important constitutional questions, of which our resolution does not render the statute unconstitutional, we elect, in this case, to address the merits of these arguments. *Cf. Hamm v. Arrowcreek Homeowners' Ass'n*, 124 Nev. 290, 300, 183 P.3d 895, 903 (2008) (noting that this court may address significant, though unpreserved, constitutional issues).

*NRS 4.010(2)(a) is not an invalid restriction on the constitutional election rights of the electorate or candidates*

Candelaria contends that NRS 4.010(2)(a) is unconstitutional because it interferes with the electorate's right to vote for the candidate of its choice and because she has a right to run for public office. Roger and Zadrowski disagree, both arguing that reasonable regulation of elections and restrictions on candidate eligibility, particularly in the judicial context, have long been upheld and that there is nothing unreasonable in requiring justices of the peace in urban areas to be licensed and admitted for at least five years.

This court has previously addressed the implications of candidate eligibility requirements on basic constitutional rights in *Nevada Judges Ass'n v. Lau*, 112 Nev. 51, 55, 910 P.2d 898, 900-01 (1996). In that case, the court, by quoting *Anderson v. Celebrezze*, 460 U.S. 780, 787 (1983), noted that two separate but overlapping rights, which " 'rank among our most precious freedoms,' " " 'the right of individuals to associate for the advancement of political beliefs' " and " 'the right of qualified voters . . . to cast their votes effectively' " are implicated by the enactment of candidate eligibility requirements. *Nevada Judges*, 112 Nev. at 55, 910 P.2d at 901. The *Nevada Judges* court explained that, while the United States Supreme Court has labeled the rights of voters "fundamental," it has also declared that the states may place restrictions on individuals' eligibility to appear on the ballot

as candidates. 112 Nev. at 56, 910 P.2d at 901 (quoting *Anderson*, 460 U.S. at 788). The *Nevada Judges* court concluded that a proposed ballot initiative that barred judges from seeking more than two terms on the same court was not an unconstitutional restriction on the rights of the voters or the candidates. 112 Nev. at 53-56, 910 P.2d at 900-01. The court focused its analysis on the state interests at stake. *Id.* at 56, 910 P.2d at 901. After expressing some initial skepticism over the wisdom of the proposed initiative, given the loss of experience that would result from the provision's passage, the court nevertheless acknowledged that the measure could also broaden the composition of the judiciary, encourage new candidates to come forward, eliminate unfair advantages provided incumbents, and discourage entrenchment of power bases in the judiciary. *Id.* at 57, 910 P.3d at 902. The court determined that the potential benefits were legitimate and that it was not the role of the court to pass on the wisdom of the initiative. *Id.*

The requirement here is far less restrictive than the *Nevada Judges* initiative, since NRS 4.010 only requires that candidates wait a certain period of time rather than possibly acting as a permanent ban after a certain period in office and is presumably of much greater legitimate interest than the initiative in *Nevada Judges*. NRS 4.010(2)(a) simply requires five years' experience before becoming a judge in a highly populated township, which is a legitimate state interest. Thus, Candelaria's first constitutional argument fails.

> *NRS 4.010(2)(a)'s establishment of different eligibility requirements for the office of justice of the peace in urban and rural areas does not violate equal protection*

Candelaria argues that NRS 4.010(2)(a) violates her equal protection rights under the United States and Nevada Constitutions by improperly creating different and disparate requirements for justices of the peace based on the population of the county and township in which the justice of the peace will serve.

The Fourteenth Amendment of the United States Constitution forbids an enactment that "den[ies] . . . any person . . . equal protection of the laws." U.S. Const. amend. XIV, § 1. Article 4, Section 21 of the Nevada Constitution requires that all laws be "general and of uniform operation throughout the State." "The standard for testing the validity of legislation under the equal protection clause of the state constitution is the same as the federal standard." *Barrett v. Baird*, 111 Nev. 1496, 1509, 908 P.2d 689, 698 (1995), *overruled on other grounds by Lioce v. Cohen*, 124 Nev. 1, 174 P.3d 970 (2008). A statute that treats similarly situated people differently implicates equal protection. *Rico v. Rodriguez*,

121 Nev. 695, 703, 120 P.3d 812, 817 (2005). When a suspect class or fundamental right is not involved, different classifications are permissible, so long as they are reasonable. *Flamingo Paradise Gaming v. Att'y General*, 125 Nev. 502, 520, 217 P.3d 546, 558-59 (2009). This court has recognized that restrictions on candidacy do not, by themselves, necessarily compel strict scrutiny under the equal protection clause. *Nevada Judges*, 112 Nev. at 56, 910 P.2d at 901. Therefore, NRS 4.010(2)(a) will be upheld as constitutional and providing reasonable classifications if there is a rational basis related to a legitimate government interest for establishing heightened qualifications for justices of the peace in this state's most densely populated areas. *Rico*, 121 Nev. at 703, 120 P.3d at 817.

As indicated by Zadrowski, justices of the peace in highly populated areas are likely to have busier dockets than their counterparts in more rural areas, and increased education and experience requirements are a rational way to advance the governmental interest in attempting to identify individuals likely to succeed under particularly demanding and fast-paced workloads. Thus, NRS 4.010(2)(a) has a legitimate purpose, and its classification between urban and rural justices of the peace is rationally related to achieving that purpose. *See Allen v. State, Pub. Emp. Ret. Bd.*, 100 Nev. 130, 136, 676 P.2d 792, 795-96 (1984) (stating that this court will not overturn legislation unless the treatment of different groups " 'is so unrelated to the achievement of any combination of legitimate purposes that [this court] can only conclude that the legislature's actions were irrational' " (quoting *Vance v. Bradley*, 440 U.S. 93, 97 (1979))); *see also Goodson v. State*, 115 Nev. 443, 991 P.2d 472 (1999) (rejecting an argument that NRS 4.010's permission of nonlawyers to preside over criminal trials for offenses punishable by jail sentences in rural areas violates equal protection or due process). Accordingly, NRS 4.010(2)(a) satisfies the equal protection clauses of the United States and Nevada Constitutions.

## CONCLUSION

In sum, the plain language of NRS 4.010(2)(a) anticipates a particular, consistent start date to the running of the five-year period that expressly terminates on the election, and that the admission date is the most reasonable date to use as beginning the period. Therefore, under the language of NRS 4.010(2)(a), Candelaria fails to meet the five-year minimum requirement. Further, we reject Candelaria's constitutional challenges to NRS 4.010(2)(a), concluding that the statute does not interfere with the electorate's right to vote for the candidate of its choice and her right to run for office; nor does it violate equal protection.

HARDESTY, DOUGLAS, and PICKERING, JJ., concur.

CHERRY, J., with whom SAITTA, J., agrees, dissenting:

I am deeply troubled by the majority's decision in this case to strike a candidate from the ballot while ignoring important constitutional and statutory challenges raised by the candidate. I would reach those issues, reverse the district court's decision, and direct that Candelaria appear on the ballot as a candidate for justice of the peace. In light of these circumstances, I dissent.

*Single-subject requirement*

This appeal presents the perfect opportunity for this court to reconcile the different approaches it has taken in applying Nevada's constitutional and statutory single-subject requirements. Nev. Const. art. 4, § 17; NRS 295.009. Article 4, Section 17 requires that "[e]ach law enacted by the Legislature shall embrace but one subject, and matter, properly connected therewith, which subject shall be briefly expressed in the title." Under NRS 295.009(1)(a), voter initiatives or referenda must "[e]mbrace but one subject and matters necessarily connected therewith and pertaining thereto." In my view, these requirements are the same, but this court treats them differently.

This court's approach to Article 4, Section 17 single-subject challenges is embodied in *Wise v. Bechtel Corp.*, 104 Nev. 750, 754, 766 P.2d 1317, 1319 (1988). In *Wise*, this court announced that "[t]he main test of the application of [Article 4, Section 17] to a particular statute is whether the title is of such a character as to mislead the public and the members of the legislature as to the subjects embraced in the act . . . ." *Id.* at 754, 766 P.2d at 1319 (internal quotation omitted). In reaching its conclusion, the *Wise* court stated that it "liberally construed the one subject [rule] and briefly expressed clauses of Article 4, § 17." *Id.* at 754, 766 P.2d at 1319 (citing *State v. Payne,* 53 Nev. 193, 197, 295 P. 770, 771-72 (1931) (stating that "[t]he constitutional requirement, though mandatory, must be liberally construed, lest meritorious legislation be declared void by reason of inartificiality in the title")).

This liberal application stems from our prior precedent, wherein we summarily disposed of Article 4, Section 17 challenges. *See Westinghouse Beverage v. Dep't Taxation*, 101 Nev. 184, 190, 698 P.2d 866, 869 (1985) (summarily rejecting, without explanation, an Article 4, Section 17 challenge to a tax on importing for sale at retail or selling at wholesale soft drinks or syrups and powders used to make soft drinks); *McLaughlin v. L.V.H.A.*, 68 Nev. 84, 97-98, 227 P.2d 206, 212-13 (1951) (dismissing, without explanation, an Article 4, Section 17 challenge to housing authority laws); *Ex Parte Cerfoglio*, 44 Nev. 343, 347-48, 195 P. 96, 97 (1921) (declaring, without explanation, that Article 4, Section 17, "though mandatory, should be liberally construed"). But this was not always the court's approach. In *State v. Commissioners of*

*Humboldt County*, 21 Nev. 235, 237, 29 P. 974, 975 (1892), this court noted that one objective behind Article 4, Section 17 was "to prevent the uniting in one act of several independent and disconnected matters, good, bad and indifferent, many of which could not be carried upon their own merits, but by uniting them together in . . . each measure, enough strength could be mustered to push it through."

Nevertheless, this court's focus has consistently been on the title of a legislative act and making sure that the title encapsulates the substance of a bill rather than focusing on whether the bill addresses multiple subjects. *Sheriff v. Miller*, 93 Nev. 509, 510-11, 569 P.2d 401, 402 (1977) (disposing of an Article 4, Section 17 challenge by concluding that a statute's content was "logically germane to the subjects expressed in the title"); *State ex rel. Brennan v. Bowman*, 89 Nev. 330, 333-34, 512 P.2d 1321, 1323 (1973) (restricting the Article 4, Section 17 review to the statute's title); *McCormick v. District Court*, 69 Nev. 214, 221, 246 P.2d 805, 808-09 (1952) (same). But by focusing only on the title, the court has eviscerated the remainder of Section 17, which clearly and unambiguously mandates that each law enacted by the Legislature encompass only one subject.

Unlike the *Wise* approach, voter initiatives and referenda will only survive a single-subject challenge "if the parts of the proposed initiative or referendum are functionally related and germane to each other in a way that provides sufficient notice of the general subject of, and of the interests likely to be affected by, the proposed initiative or referendum." NRS 295.009(2); *see also Las Vegas Taxpayer Comm. v. City Council*, 125 Nev. 165, 176-80, 208 P.3d 429, 436-39 (2009) (determining that NRS 295.009 applies to municipal ballot measures and concluding that the proposed initiative was invalid on statutory single-subject grounds); *Nevadans for Prop. Rights v. Sec'y of State*, 122 Nev. 894, 901-09, 141 P.3d 1235, 1240-45, (2006) (rejecting constitutional challenges to NRS 295.009 and concluding that the proposed initiative violated the statutory single-subject requirement). This court's different treatment given to acts of the Legislature and voter-sponsored initiatives and referenda creates an untenable situation. As a result, voter-sponsored initiatives and referenda are treated as less important than legislative acts, which are afforded more deference by this court. Given the similarity of language and purpose behind the two single-subject provisions, the application of vastly different requirements in determining compliance with the provisions is wholly improper. *See State ex rel. Caleb v. Beesley*, 949 P.2d 724, 728 (Or. 1997) (determining that there was no meaningful textual difference between the single-subject requirements afforded legislatively enacted laws and initiative petitions by the Oregon state constitution and that precedent from both constitu-

tional provisions were relevant in determining whether an enacted ballot measure was unconstitutional under the Oregon constitution).

And while Article 4, Section 17 lacks the clear definition of the appropriate method of review, as provided in NRS 295.009(2), that statute's "functionally related and germane" requirement is largely identical to this court's seemingly abandoned statement in *Humboldt* that Article 4, Section 17 requires that bills not address "several independent and disconnected matters." 21 Nev. at 237, 29 P. at 975. I would resurrect and give force to the *Humboldt* language to ensure that bills enacted by the Legislature are subject to similar requirements as those applicable to voter initiatives and referenda. Applying this approach to the case at hand, I would strike down the 2005 amendments to NRS 4.010 as violating this constitutional provision.

## NRS 4.010(2)(a) is ambiguous

The majority's conclusion that NRS 4.010(2)(a)'s language is clear and unambiguous confounds me. Nothing in the statute sets forth any manner for determining when an attorney has complied with the five-year requirement. As a result, the majority develops its own way for making this determination. The majority's interpretation of the statute's language is reasonable, but Candelaria offers an equally reasonable interpretation of the statute. As Candelaria points out, the record demonstrates that the State Bar has assessed her membership fees at the rate applicable to "[a]ctive members admitted to practice in any jurisdiction 5 years or more." SCR 98(9). Because the State Bar is an arm of this court, it can reasonably be said that, in the eyes of this court, which is vested with the inherent power to define the practice of the law in this state, *In re Lerner*, 124 Nev. 1232, 1237, 197 P.3d 1067, 1071 (2008), Candelaria has been deemed a fifth-year attorney under language that is fundamentally identical to that used in NRS 4.010(2)(a).[1]

In light of these competing reasonable interpretations of NRS 4.010(2)(a), the statute simply cannot be classified as unambiguous. I find it interesting that this court has not hesitated to find ambiguity in statutes and constitutional provisions establishing other time periods, *see Nevada Mining Ass'n v. Erdoes*, 117 Nev. 531, 26 P.3d 753 (2001) (interpreting the phrase "not later than mid-

---

[1]*Compare* SCR 98(9) (designating, among other categories, "[a]ctive members admitted to practice in any jurisdiction 5 years or more" as subject to a certain dues rate) *with* NRS 4.010(2)(a) (requiring certain justice of the peace candidates to be "an attorney . . . licensed and admitted to practice law in the courts of this State . . . for not less than 5 years at any time preceding his or her election or appointment").

night Pacific standard time'' to permit the Legislature to act until 1 a.m.); *SNEA v. Lau*, 110 Nev. 715, 718, 877 P.2d 531, 534 (1994) (determining that the term ''years,'' as used in Article 5, Section 3 of the Nevada Constitution was ambiguous), and I struggle to see the justification for failing to reach a similar result in this case.

This court's precedent mandates that we interpret any ambiguity in favor of a challenged candidate's eligibility to run for public office. *SNEA*, 110 Nev. at 720, 877 P.2d at 535. And we have held that a litigant seeking to challenge a candidate's eligibility for the ballot ''should prevail only if the [provision providing the candidate restriction] cannot possibly refer to anything other than'' a single reasonable interpretation. *Id.* Thus, because I conclude that NRS 4.010(2)(a) is ambiguous, the statute must be interpreted in favor of permitting Candelaria to appear on the ballot and allowing the voters to make the final decision on this matter. *Id.*

## Equal protection rights

Finally, in rejecting Candelaria's equal protection contention, the majority glosses over the immense disparity of required qualifications created by NRS 4.010(2)(a) for urban and rural justices of the peace. In most urban areas, a candidate for justice of the peace must be an attorney, licensed and admitted to practice law for not less than five years, while elsewhere, a candidate need only have a high school diploma or ''its equivalent.'' NRS 4.010(2). However, NRS 4.010(2)(a) and (b) do not distinguish between all urban and rural communities. Although NRS 4.010(2)(a) requires justices of the peace to be attorneys with five years of experience in Clark County for townships with populations above 100,000, NRS 4.010(2)(b) only requires justices of the peace to be attorneys with five years of experience in Washoe County for townships with populations above 250,000. Therefore, a justice of the peace in the urban area of Sparks Township does not have to be an attorney. What is the rational basis for this township population disparity between Clark and Washoe counties? In addition, it has long been common practice in Clark County for justices of the peace from small townships, who are not attorneys, to sit and hear court calendars in Nevada's largest township, Las Vegas Justice Court. When comparing and considering these different requirements, Candelaria's equal protection arguments become far more compelling and demonstrate that a violation of her equal protection rights has occurred.

Further, under the scheme created by NRS 4.010(2)(a), in this state's capital, Carson City, a person with business before the justice court could have his or her case decided by a justice of the peace with only a high school diploma or ''its equivalent.'' In stark contrast, a litigant with the same business in Las Vegas or Reno

justice courts could *not* have his or her case heard by an individual who graduated from one of this country's most prestigious colleges, attended one of the nation's most highly regarded law schools, and worked as an associate at a major law firm or as a staff attorney for this court for four years, as that person would not have the required five years of experience.[2] This situation is shameful and cannot possibly further any legitimate interests of this state.

I would further note that we recently concluded that the censure of an elected public officer by the Nevada Commission on Ethics for alleged voting infractions violated the First Amendment. *See Carrigan v. Commission on Ethics*, 126 Nev. 277, 236 P.3d 616 (2010). In *Carrigan*, we cited *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), for the proposition that NRS 281A.420(2)(c) must be declared unconstitutional because the statute was not narrowly tailored to meet a compelling government interest. We reviewed this statute under a strict scrutiny analysis.

As we acknowledged in *Nevada Judges Ass'n v. Lau*, " '[t]he right to hold public office is one of the valuable rights of citizenship. The exercise of this right should not be declared prohibited or curtailed except by plain provisions of the law. Ambiguities are to be resolved in favor of eligibility to office.' " 112 Nev. 51, 55, 910 P.2d 898, 901 (1996) (quoting *Gilbert v. Breithaupt*, 60 Nev. 162, 165, 104 P.2d 183, 184 (1940)). Therefore, NRS 4.010(2) must be reviewed under a strict scrutiny analysis. Thus, I would strike down NRS 4.010(2)(a) as violating Candelaria's equal protection rights[3] by creating an absurd distinction that cannot withstand even the lowest level of judicial scrutiny.

---

[2]One notable exception to NRS 4.010(2)(a)'s heightened qualifications for urban justices of the peace is the fact that, under NRS 4.010(3), these requirements do not apply to individuals already serving as justices of the peace prior to June 30, 2001. This exception deals a fatal blow to any argument that *these heightened requirements are necessary to protect the justice courts'* ability to conduct business in more populous areas. If these additional requirements were truly vital, the Legislature would have necessarily barred *all* individuals who failed to meet those requirements from serving as justices of the peace, regardless of whether they already held the office.

[3]While I acknowledge that, in *Goodson v. State*, 115 Nev. 443, 991 P.2d 472 (1999), this court concluded that permitting nonlawyers to preside over criminal trials punishable by jail sentences in rural areas does not violate the defendant's equal protection or due process rights, I question the continuing viability of this decision in light of the significant population growth experienced by this state prior to the current economic downturn.